23445. REID, by Guardian v. WILKERSON et al.

Argued May 9, 1966—Decided June 9, 1966—
Rehearing denied June 23, 1966.

*Joel A. Willis, Jr., Marvin T. Morrow,* for appellant.

*Roy N. Cowart, Aultman, Hulbert, Buice & Cowart, Donald L. Hollowell, Hubert A. Aultman,* for appellees.

Grice, Justice. To a petition seeking injunction and cancellation of documents as clouds upon title to land, the trial court sustained general demurrers and pleas of laches and estoppel. Those rulings emanated from a suit filed in the Superior Court of Houston County by Lois Burnam Reid against R. A. Wilkerson, Modern Homesites, Inc., The Citizens State Bank, Henry Burnam, Bessie Burnam, and James E. Bryant.

The petition, as amended, made the essential allegations which follow.

The plaintiff for the past 22 years has lived upon described land located in Land Lot 148 of that county.

Her mother, Cora Burnam, on February 22, 1942, executed to her a warranty deed conveying the remainder interest in 101.5 acres in Land Lot 148, besides other land not now in question.

At that time the plaintiff was not aware that her mother and her brother, the defendant Henry Burnam, had in 1941 executed to Macon Production Credit Association a security deed, recorded in that year, purporting to convey land which included 101.5 acres in Land Lot 148. The brother then had no interest in the land and the mother did not intend for him to have any interest therein.

The plaintiff did not have personal knowledge of this security deed until about two years before filing this suit. She then also learned that Henry Burnam had not paid the loan he incurred and that the security deed had been foreclosed and the property unlawfully sold to C. B. Watson on May 7, 1943.

Nevertheless, Watson did not occupy any land in Land Lot 148 or do anything to show that he owned it. The description in the foreclosure deed is so vague that it is impossible to identify any land in Land Lot 148 from its reading, and therefore it conveyed nothing and provided no notice that this was the property occupied by the plaintiff. Watson knew that the plaintiff was living on the land in Land Lot 148, claiming title thereto, farming it each year, holding exclusive possession of it, and notoriously holding it out as her land; yet he took no action to identify any land in Land Lot 148 as being that passing under the foreclosure deed, and did not inform her that he was claiming any of her land. Furthermore, the aforementioned security deed did not contain any power of sale allowing the grantee to convey title at foreclosure and did not expressly confer upon the grantee the authority to perfect a foreclosure deed. The deed to Watson is for these reasons null and void.

Watson, on December 27, 1944, unknown to the plaintiff and without legal title, sold the land he purchased at the foreclosure sale to Henry Burnam, who had previously defaulted on the loan, referred to above. But he did not take possession of any land in Land Lot 148 or do anything to show possession or ownership. The plaintiff continued unmolested in her occupation of her land and continued to hold exclusive possession, cultivating and using the property as always.

After her mother died in the summer of 1942, plaintiff claimed title to the property under the aforesaid deed of February 1942. She went into active possession in the fall of 1942, cleared the land, planted crops, had various and sundry dealings with Federal and county governments on the basis of ownership, completely dominated and controlled the 101.5 acres in question, and held it out as her own continuously, openly and notoriously. No one gave her any reason to believe she did not have a good title to the land. So complete was her adverse possession under her deed as color of title that by the fall of 1949 her title had become complete and was no longer subject to being defeated by anyone under any claim whatsoever so long as she maintained her title and possession.

Henry Burnam, by two deeds in 1957, purported to convey to

his wife, the defendant Bessie Burnam, property which included 40 acres in Land Lot 148. These deeds create clouds on plaintiff's title and should be stricken.

Henry and Bessie Burnam executed a land option contract in 1959 to the defendant Wilkerson and also a quitclaim deed on April 26, 1965, to the defendant Modern Homesites, Inc. These two documents concern land in Land Lot 148 and form the claim of Wilkerson and Modern Homesites, Inc., to plaintiff's land. The quitclaim deed attempted to convey 98.7 acres in Land Lot 148 which is part of the land owned by the plaintiff. When such documents were executed these four defendants knew that the plaintiff owned the land and had continued to hold it exclusively since 1942, cultivating it and holding it out as her property above the claims of anyone. So notorious was her claim that Henry and Bessie Burnam did not interfere with her until they executed the deed to Modern Homesites, Inc., in 1965.

By letter dated May 24, 1965, Modern Homesites, Inc., notified plaintiff to vacate the land in Land Lot 148. Wilkerson, an officer and agent of Modern Homesites, Inc., signed this letter as its agent. On June 12, 1965, they moved on the land with a bulldozer, moving dirt, cutting down trees and evicting a tenant. The defendants are unlawfully upon the plaintiff's property and are trespassing and interfering to such an extent that she will suffer irreparable damage. She seeks injunctive relief prohibiting the defendants from asserting ownership and title to her property.

In June 1965 Modern Homesites, Inc., conveyed to the defendant Bryant a 5.25 acre tract in Land Lot 148. This deed casts a cloud upon plaintiff's title to her land.

The instruments sought to be canceled of record as clouds upon the plaintiff's title to property in Land Lot 148 are as follows: the foreclosure deed, the two deeds from Henry Burnam to Bessie Burnam, the land option contract from Henry and Bessie Burnam to Wilkerson, the deed from Henry and Bessie Burnam to Modern Homesites, Inc., and the deed from Modern Homesites, Inc., to Bryant.

The prayers included that the defendants deliver up these deeds and that they be canceled, that the defendants be en-

joined from coming upon her land, moving dirt, cutting down trees or doing any act asserting title to the land, and general relief.

To this amended petition, the defendants, except Henry and Bessie Burnam, filed answers, general and special demurrers and special pleas of laches and estoppel. The contents of these special pleas will be set forth hereinafter.

Upon the sustaining of such general demurrers and special pleas, the plaintiff appealed to this court.

■ From our study of the petition, we conclude that it states a cause of action on account of adverse possession of land for 20 years, pursuant to *Code* § 85-406.

It is therefore unnecessary to deal with contentions relating to the alleged invalidity of the 1941 security deed and its foreclosure, or seven years adverse possession under color of title. The allegations as to 20 years adverse possession alone render the petition sufficient to withstand general demurrer.

They meet the requirements of *Code* § 85-402: "Possession to be the foundation of prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right. Permissive possession cannot be the foundation of a prescription, until an adverse claim and actual notice to the other party." They also comply with the elements of *Code* § 85-403: "Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another."

We refer to the significant allegations as to the plaintiff's possession.

She alleged that she went into active possession of the land in question in the fall of 1942; that she cleared the land, planted crops, had various and sundry dealings with the Federal and county governments on the basis of ownership of the land, completely dominated and controlled it, and held it out as her own continuously, openly and notoriously; and that no one informed her or gave her any reason to believe she did not have a good title to the land.

She alleged that upon the 1943 foreclosure and sale to Watson, he took no action to identify any land in Land Lot 148 as being that passing under the foreclosure deed and did not inform her that he was claiming any of her property, although he knew she claimed title to the land, farmed it, and had exclusive possession of it.

She alleged that in 1944 when Watson sold to her brother Henry Burnam, he likewise did not take possession, or do anything to show ownership, but that she continued unmolested in her occupation and continued to hold exclusive possession, cultivating and using the property as always, and that he and his wife knew she continued to thus hold and use the property. They did not in the least interfere with her until they executed the 1965 deed to Modern Homesites, Inc.

Under these allegations, the plaintiff had adversely possessed this land for more than 20 years when this suit was filed.

However, the defendants contend that the plaintiff's possession could not ripen into prescriptive title because upon the foreclosure of the security deed she became a tenant at sufferance of the purchaser so that her possession was permissive, not adverse, and also because prescription will not run in favor of a tenant against her landlord or against the holder of a security deed in favor of one who has notice of it.

These contentions are not meritorious.

A tenant at sufferance "holds over by wrong, and he is in possession, *not by permission* of the landlord, but as a result of his laches or neglect. . . [Citations.]" *Willis v. Harrell*, 118 Ga. 906, 909 (45 SE 794). (Emphasis ours.) Therefore, even if the plaintiff became a tenant at sufferance, her possession was not permissive so as not to be the foundation of prescription under *Code* § 85-402.

Also, since the plaintiff's possession did not originate as a tenant, but in her own right under her mother's deed, the rule that possession originating in a landlord-tenant relation cannot be the basis of prescriptive title (*Stepp v. Stepp*, 195 Ga. 595 (4) (25 SE2d 6)) does not apply.

Likewise, the principle that "Prescription shall not run against the . . . holder of a . . . deed to secure debt . . .

in favor of a person who has actual or constructive notice of such instrument" (*Code Ann.* § 85-417), is not applicable. The plaintiff was in adverse possession for more than 20 years *after* the security deed was foreclosed.

Therefore, the petition stated a cause of action.

The fact that some of the deeds sought to be canceled purport to convey property in addition to that lying in Land Lot 148, and thus not in issue here, does not afford a ground to deny such relief as to the portion which lies in Land Lot 148 and is thus involved. In this situation partial cancellation may be had. See 13 Am. Jur. 2d 543, Cancellation of Instruments, § 68; 12 CJS 1080, Cancellation of Instruments, § 78 (b).

■ Coming now to the special pleas of laches and estoppel, we treat them together since their allegations are substantially the same.

They recited that the plaintiff's rights in the property were accepted subject to a security deed which was legally foreclosed. They also alleged that in the same court a case in which Henry and Bessie Burnam claimed full interest in this property was processed to final determination, that the plaintiff failed to object or to make any claim she may have had thereto, that these defendants did not admit she had any claim thereto, and that because of her inaction she is estopped and is guilty of laches. Also, she has failed to object to many conveyances of this property by Henry and Bessie Burnam, these being recorded.

Having direct application to the allegations here is the well established rule that "Neither laches nor the statute of limitations will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish his rights." *Sutton v. McMillan,* 213 Ga. 90 (7) (97 SE2d 139).

The special pleas should not have been sustained.

*Judgments reversed. All the Justices concur.*