In the Supreme Court of Georgia

Decided: October 6, 2014

S14A0932.  UNIFIED GOVERNMENT OF ATHENS-CLARKE CO. v.
STILES APARTMENTS, INC.

BENHAM, Justice.

Appellee Stiles Apartments, Inc. filed an action for temporary and permanent injunctive relief against appellant the Unified Government of Athens-Clarke County regarding a parking area located on its property in the busy Five Points shopping district in Athens.  In 1954, appellee and appellant's predecessor City of Athens entered into the following contractual agreement:

> That whereas, [Stiles Apartments] is the owner of certain lands in the City of Athens, Clarke County, Georgia, located on the westerly side of South Lumpkin Street, on which lands are located apartment houses known as Henrietta Apartments and Milledge Park Apartments;
>
> And whereas it is desired by both parties to this agreement that the area of land lying between the westerly side of Lumpkin Street and Henrietta Apartments be made available for parking of vehicles in order to relieve traffic congestion along South Lumpkin Street;

And whereas, in order to so use this area it will be necessary to remove and relocate the sidewalk along the westerly side of Lumpkin Street, and to lower the curb along said street;

And whereas [Stiles Apartments] is agreeable to the use of the land above referred to for the purpose herein specified, but desires to retain title to that area, and to provide for its use so as not to give to the general public any vested rights therein as a public street, or part thereof.

Now therefore, for and in consideration of the mutual agreements and undertakings herein set out, it is agreed between the parties hereto as follows:

(1) That the area of land lying between Henrietta Apartments and the westerly side of South Lumpkin Street be developed into a paved parking area in accordance with plans prepared by Mr. J. G. Beacham, City Engineer, including the re-location of [the] sidewalk as shown on said plans, the construction work on this project to be performed by [Athens], through its public works department;

(2) It is agreed that [Stiles Apartments] shall pay to [Athens] all cost[s] of such construction, including labor and materials, and a reasonable charge for use of equipment, upon completion of the construction project and demand therefor with statement of the amount of same;

(3) It is agreed and understood that [Stiles Apartments] does not dedicate the portion of its land to be involved in such project to a public use, but that [Stiles Apartments] retains title to said property under the terms and agreement herein after stated;

(4) It is agreed that the present sidewalk along the westerly side of Lumpkin Street and adjacent to the area involved in this project shall be removed, and a sidewalk running along the northerly,

2

westerly and southerly boundaries of the parking area to be constructed shall be provided, kept open and maintained as apart of said project in accordance with the provisions of this agreement.

(5) It is agreed that in the event [Stiles Apartments] should desire to discontinue the use of its property in the manner contemplated by this agreement, it shall have the right to do so, and in such event [Stiles Apartments] shall, at its own expense, restore the curb and sidewalk along the westerly side of South Lumpkin Street to their approximate present condition.

(6) [Athens] shall maintain the parking area and sidewalk provided for in this agreement in the same manner which it would if same were part of the public street system of the City of Athens.

(7) [Stiles Apartments] shall have the right to close the parking area and proposed side walk temporarily within each seven (7) year period in order to protect its title against public acquisition of rights in and to said property.

When construction pursuant to the above-agreement was complete, the pre-1954 sidewalk had been removed and a new sidewalk erected entirely on land owned by appellee. As for the parking area that was constructed, approximately 13 feet of each parking space lays on land owned by appellee, with the remaining 5 to 6 feet of each parking space laying on land formerly occupied by the pre-1954 sidewalk. The record shows that appellee pays and has paid taxes on the entire parking area, including that portion of land where the pre-1954 sidewalk used to be.

3

In or around 2003 or 2004 a dispute arose between the parties over the interpretation of the contract as to which party had control over access to and use of the parking area,[1] eventually causing appellee to file the instant action for temporary and permanent injunctive relief.[2] The trial court awarded an interlocutory injunction to appellee and this Court affirmed in Unified Government of Athens-Clarke County v. Stiles Apartments, Inc., 290 Ga. 740 (723 SE2d 681) (2012). In that case, we noted that the final issue for the trial court to determine was "whether the parties to the 1954 agreement intended to create or reserve public property rights in the land owned by [appellee], thereby giving the authority to control who can or cannot use the parking area to [appellant]." Id. at 741. In its final order setting forth its findings of fact and conclusions of law, the trial court answered this question in the negative.

Adopting the tenets of contract construction, the trial court first determined that the parties to the 1954 agreement never intended to create public

---

[1]In the 2000s, the increasing difficulty of finding parking in the Five Points shopping district was having a negative effect on businesses in the area, including the retail businesses located in appellee's building. When appellee's president attempted to have a car towed and attempted to reserve parking spaces for its retail tenants, appellant's attorney advised that appellee had no authority to take such actions. In April 2005, appellant's attorney sent a letter to appellee officially advising appellee that it had no authority to control access to and use of the parking area.

[2]Appellant filed a counterclaim for declaratory judgment, ejectment, and breach of contract.

property rights in the land owned by appellee and that appellee always had the right to control the parking area at issue. Key to this determination was the trial court's finding that the purpose of the agreement was to relieve traffic congestion along South Lumpkin Street; that, at the time, the persons who would need parking were appellee's customers and tenants; that language in the agreement showed that appellee had no intention of giving up control of its property; that the land was not dedicated to the City; that the land was not burdened with an easement; and that its construction of the 1954 agreement gave the terms stated therein their full meaning and effect. The trial court also noted that it would be unlikely for a landowner to give up control over property for which it pays taxes. The trial court next determined that equitable relief was appropriate under the circumstances of the case. The trial court also concluded that appellee's claims were not barred by theories of laches, waiver, or the expiration of the statute of limitations. Finally, the trial court determined that appellant's predecessor had not dedicated or abandoned the original right-of-way to appellee and that the agreement did not violate the prohibition on future councils per OCGA § 36-30-3 (a). The trial court denied appellant's motion for new trial and this appeal followed. For reasons set forth herein, we affirm.

5

1. Appellant argues that the terms of the 1954 agreement give the general public unfettered access to the parking area at issue and that the trial court erred when it determined otherwise. Generally, contract construction is a question of law for the court. OCGA § 13-2-1. On appeal, we review the trial court's construction of a contract de novo. Knott v. Knott, 277 Ga. 380 (2) (589 SE2d 99) (2003). "The cardinal rule of contract construction is to ascertain the intention of the parties." OCGA § 13-2-3. Here, the parties essentially concede that the 1954 agreement is unambiguous in its terms, but disagree as to the interpretation of those terms in regard to who has the right to control access to and use of the parking area. When the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent. Lloyd's Syndicate No. 5820 v. AGCO Corp., 294 Ga. 805 (2) (756 SE2d 520) (2014).

A plain reading of the second paragraph of the 1954 agreement makes it clear that the parties' ultimate intent was to relieve traffic congestion on South Lumpkin Street. The creation of the parking area and the relocation of the pre-1954 sidewalk onto appellee's private property was the agreed means to effectuate this goal. Therefore, unlike appellant urges, the creation of a

6

dedicated parking area for the general public was not the purpose of the agreement. This conclusion is supported by the fourth paragraph of the agreement which states that appellee does not give any "vested rights" to the general public, and by section 3 of the agreement which states that appellee does not dedicate its land to a public use and that it retains title in its land. Per section 4 of the agreement, appellee is required to "[keep] open" the relocated sidewalk subject to an exception in section 7 providing that appellee could close the relocated sidewalk, as well as the parking area, for a period of time every seven years in order to avoid losing title to its private property by prescription. The agreement does not require appellee to "[keep] open" the parking area. This difference in treatment of the sidewalk vis-a-vis the parking area indicates the parties never intended that the parking area be kept open for the public. The language in section 6 of the agreement does not change this determination. That paragraph requires appellant to "maintain the parking area and sidewalk ...in the same manner which it would **if** same were part of the public street system...." (Emphasis supplied.) The word "if" and the subsequent phrase indicate that the parties did not intend for the parking area to be a part of the public street system. Therefore, the trial court did not err in its construction of the 1954 agreement.

2. Appellant contends that the trial court erred when it failed to find that the 1954 agreement constituted an unlawful dedication of public property to a purely private interest. The 1954 agreement did not solely cater to a private use of a public right of way. The 1954 agreement served the interests of the public by relieving the traffic congestion on South Lumpkin Street and by providing a new sidewalk on which the public could continue to traverse alongside the street. As such, the agreement did not constitute an abuse of power by appellant; that is, there was no abandonment of the public right-of-way for a purely private use. Compare Dunlap v. Tift, 209 Ga. 201, 209 (1) (71 SE2d 237) (1952).

3. Appellant alleges the 1954 agreement is unlawful because it violates the prohibition against binding successor councils. OCGA § 36-30-3 (a) provides: "One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." In addition to ordinances, the prohibition applies to contracts entered into by municipalities. City of McDonough v. Campbell, 289 Ga. 216 (1) (710 SE2d 537) (2011). "The intent of the prohibition is to allow future municipal governments to legislate freely in matters such as operating budgets. To the

extent that a governmental contract impinges on a municipality's ability to legislate freely, the contract is ultra vires and void." (Citations omitted) Id. at 217. This Court has held, however, that the prohibition generally applies to a municipality's governmental functions and not its proprietary functions. City of Powder Springs v. WMM Properties, Inc., 253 Ga. 753 (2) (325 SE2d 155) (1985). As such, there are four questions to consider when determining whether a municipal contract is subject to the prohibition:

> (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

Id. at 756-757. See also Unified Government of Athens-Clarke County v. North, 250 Ga. App. 432, 435-436 (1) (551 SE2d 798) (2001).

This Court has held that the construction and maintenance of a street in a safe condition for travel are corporate/proprietary functions not subject to the prohibition against binding successor councils. Town of Fort Oglethorpe v. Phillips, 224 Ga. 834, 837 (165 SE2d 141) (1968). Thus, the 1954 agreement, inasmuch as its purpose was to relieve traffic congestion on a public street via

9

the construction and maintenance of a sidewalk and parking area, was in the nature of a government's proprietary functions and was not subject to the prohibition against binding successor councils.

4. Appellant argues that the trial court erred when it failed to hold that appellee's underlying action for injunctive relief was barred by the statute of limitations, laches, and waiver. In this case, appellee brought an action for equitable relief concerning its rights of ownership in the parking area. Appellee did not assert a breach of contract claim, nor did it assert that appellant had failed to perform a material term of the 1954 agreement. Appellant admits that appellee has title to at least the majority of the parking area and the record shows appellee pays taxes on the entirety of the parking area. Although appellant has performed some maintenance activities for the parking area, it does not purport to possess it. Anyone who is in peaceable possession of property is not barred by laches or the statute of limitations when bringing an action in equity to establish his rights in such property. Reid v. Wilkerson, 222 Ga. 282 (2) (149 SE2d 700) (1966) ("'Neither laches nor the statute of limitations will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish his

rights.' [Cit.]"); W. L. Schautz Co. v. Duncan Hosiery Mills, Inc., 218 Ga. 729 (1) (130 SE2d 496) (1963); Lominick v. Lominick, 213 Ga. 53, 55 (96 SE2d 587) (1957); Toombs v. Hilliard, 209 Ga. 755 (5) (a) (75 SE2d 801) (1953). Accordingly, appellant's assertion that the instant action for injunctive relief fails because of laches or the running of the statute of limitation period is without merit.

Likewise, appellant's argument that appellee waived its right of control over the parking area cannot be sustained. The record shows that appellee never explicitly or implicitly ceded control over the parking area to appellant. The record shows that both parties engaged in maintenance activities of the area, with appellee spending the most time and resources on such maintenance. While appellee did ask for and post government-provided signs limiting parking to two hours, the government enforced the parking limits very sporadically and usually at the request of appellee's retail tenants. Appellee actively protected its title in the property by closing the sidewalk and parking area every five to seven years. "[W]here the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular

11

right or benefit that no other reasonable explanation of his conduct is possible." NW Parkway LLC v. Lemser, 309 Ga. App. 172, 177–178 (3) (709 SE2d 858) (2011). Here, nothing appellee did or failed to do indicated its intent to relinquish control of the parking area to the general public or to appellant. The trial court did not err when it determined appellee had not waived its right of control.

5. Appellant contends the trial court erred when it held that appellee had control over the parking area. Since we have determined that the parking area remained in appellee's possession unencumbered by any easement or dedication to a public use, the trial court did not err with regard to this issue. See Woodside v. City of Atlanta, 214 Ga. 75, 84 (103 SE2d 108) (1958) (property ownership includes "the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use [cit.]"); LN West Paces Ferry Associates, LLC v. McDonald, 306 Ga. App. 641 (1) (a) (703 SE2d 85) (2010). Accordingly, this allegation of error cannot be sustained.

Judgment affirmed. All the Justices concur.