**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 21, 2014**

# In the Court of Appeals of Georgia

A14A0873. CITY OF STOCKBRIDGE v. STUART, IN HIS OFFICIAL CAPACITY AS THE MAYOR OF THE CITY OF STOCKBRIDGE.

BOGGS, Judge.

The City of Stockbridge ("the city") appeals from a trial court order granting Lee Stuart, the then Mayor of the City of Stockbridge ("the mayor"), injunctive and declaratory relief, and attorney fees, in this dispute involving the extension of Ray Gibson's employment contract as the city administrator.[1] For the following reasons, we affirm.

---

[1] In the same order, the trial court denied the city's petition for a writ of mandamus. The cross-appeals in this action were originally filed in the Georgia Supreme Court, but that court found that the denial of mandamus relief is moot because the mayor "has left office and a new city administrator has been appointed." The court then transferred the appeal of the injunctive and declaratory relief and award of attorney fees to this court on the ground that those issues are not within its jurisdiction.

The record reveals that in April 2011, the mayor and city council adopted an ordinance creating the position of city administrator. This ordinance, which amended the city's Code of Ordinances, provided that the mayor desired to delegate certain of his powers and duties to that position pursuant to Section 3.21 of the Stockbridge City Charter ("the charter") (1991 Ga. Laws 4359-4392). The new ordinance also provided:

(a) Within sixty (60) days of a vacancy in the position of city administrator, the mayor shall recommend to the council at least (2) qualified candidate(s) for the position of city administrator. In the event the council rejects the mayor's recommended candidates, the mayor shall have an additional fifteen (15) days to interview qualified candidates and make additional recommendations to the council. The council may accept or reject the mayor's additional recommended candidates.

(b) The council shall employ a city administrator pursuant to a written contract and shall fix the city administrator's compensation therein. Said administrator shall serve at the pleasure of the mayor and city council . . . .

In May 2011, the city adopted a resolution approving the appointment of Ray Gibson as city administrator. The resolution provided that the mayor "wishes to appoint Ray Gibson to fill the vacant position of City Administrator through December 31, 2011." The city's contract with Gibson provided that the term of employment was from

May 3, 2011 to December 31, 2011, and also provided that city administrator serves at the pleasure of the mayor and city council; that the mayor may recommend, and the city council may remove or suspend, the city administrator; and that "the Mayor may recommend and upon his recommendation, thereafter the City Council may terminate City Administrator's employment at any time, as provided in this Agreement. If the City Council terminates the City Administrator's employment, then this Agreement shall terminate."

In December 2011, the city council, by resolution, extended Gibson's employment contract for three months, until March 30, 2012. The mayor did not sign this resolution, but the parties agree that he acquiesced in this extension of Gibson's contract.

On March 5, 2012, however, the mayor submitted two candidates for Gibson's position for consideration by the city council in accordance with the ordinance, because in his view, the position would be vacant as of March 31, 2012. But during a meeting the day after the mayor's submission, the city council introduced a resolution to extend Gibson's contract to December 31, 2013. The mayor again refused to sign the

3

resolution,[2] and on March 26, 2012, he filed a verified complaint against the city seeking an interlocutory injunction, a declaratory judgment, and attorney fees. Subsequently, on April 3, 2012, the mayor again presented his nominations for the position of city administrator to the city council.

The mayor's complaint sought a declaration that the city council's actions to extend Gibson's contract were illegal and ultra vires, and to temporarily and permanently enjoin the city from the "illegal appointment of Ray Gibson as City Administrator beyond March 30, 2012." The mayor also sought to enjoin the city from filling the position of city administrator except in accordance with the ordinance.

Following three hearings on the matter, the trial court entered an order granting the mayor a permanent injunction, restraining and enjoining the city from "taking any action that in any way relies on the validity of the extension of Gibson's term of office or his employment contract as City Administrator." The court also granted the mayor's request for a declaratory judgment finding that the actions by the city council

> seeking to unilaterally extend the Contract of Ray Gibson were without authority, were *ultra vires*, and are void. Ray Gibson's Contract expired

---

[2]Each resolution to extend Gibson's employment contract provided that the resolution was "effective on the date of its approval by the City Council and Mayor as provided in the City Charter."

by its terms on March 31, 2012, and the resolution seeking to extend his Contract is null and void. It is further declared that only the Mayor may nominate or appoint individuals to the position of City Administrator and the City Council may then accept or reject such nominees.

Finally, the court awarded the mayor attorney fees pursuant to *Boswell v. Bramlett*, 274 Ga. 50, 52-53 (c) (549 SE2d 100) (2001).

1. While an appeal from the relief granted to the mayor is arguably moot now that Gibson is no longer employed by the city,[3] we must nevertheless address the merits of the city's appeal in light of the trial court's award of attorney fees to the mayor on the ground that he "was successful in asserting his position." See *Babies Right Start v. Ga. Dept. of Public Health*, 293 Ga. 553, 555 (2) (a) (748 SE2d 404) (2013) (claims for injunctive relief to stop disqualification and for a declaratory judgment that disqualification was improper, were moot because term of disqualification expired; relief would have no effect); see also *Green Party of Tennessee v. Hargett*, 2014 U. S. App. LEXIS 16207 (II) (E) (1) (6th Cir. 2014) (pursuant to federal statute allowing attorney fees for "prevailing party," where plaintiffs succeed in obtaining relief sought,

_____

[3]It is undisputed that the Gibson is no longer employed as city administrator and that Stuart is no longer mayor. The parties assert that Gibson voluntarily left office on May 24, 2012.

5

even though intervening event rendered case moot on appeal, plaintiffs are still "prevailing parties" for purposes of attorney fees); *Donovan v. The Punxsutawney Area School Bd.*, 336 F.3d 211, 218 (IV) (3rd Cir. 2003) (although claim for declaratory and injunctive relief is moot, attorney fee claim presents live controversy). Compare *Babies Right Start*, supra (prayer for attorney fees without actual award of fees, does not preclude a determination that case is moot).

2. The city argues that the trial court erred in granting the mayor injunctive and declaratory relief. "The grant or denial of injunctive relief is a matter within the discretion of the trial court, and appellate review of the trial court's decision is limited to a determination of whether the trial court abused its discretion." (Citation omitted.) *Teague v. City of Canton*, 267 Ga. 679, 680 (1) (482 SE2d 237) (1997). And "[i]n a declaratory judgment action, the trial court is specifically authorized to grant injunctive relief to preserve the status quo pending the adjudication on the merits." (Citations omitted.) *Scott v. Prime Sales & Leasing*, 276 Ga. App. 283, 287 (2) (623 SE2d 167) (2005).

We begin our analysis with the relevant provisions of the Stockbridge City Charter. Section 3.22 (2) of the charter provides that the mayor shall "[a]ppoint and remove, for cause, with confirmation of appointment or removal by the council, all

officers, department heads, and employees of the city except as otherwise provided in this charter." And Section 3.21 provides that the mayor "shall have the authority to delegate any one or more executive or administrative powers to a person or persons employed by the city and qualified in management and administration."

The record here reveals that on April 18, 2011, the mayor, pursuant to Section 3.21 of the charter, delegated certain of his authority and powers by ordinance to the position of city administrator. The mayor then, pursuant to the city council's May 2, 2011 resolution, appointed Gibson to the position, and the city council approved that appointment. The city then entered into an employment contract with Gibson effective May 3, 2011 to December 31, 2011. The resolution and contract both provided or anticipated that Gibson's contract would terminate on December 31, 2011. And the parties either consented to, or acquiesced in, the extension of Gibson's contract through March 30, 2012. The question presented here, then, is whether the city council had the authority to unilaterally extend Gibson's contract beyond the end of the contract term.

The city argues that only the terms of Gibson's contract expired and that his appointment never expired, that both the charter and the ordinance gave the city council the final authority to hire and fire the city administrator, and that while the ordinance is silent regarding the procedure to terminate the city administrator, it must be assumed

that Sections 3.22 (2) and 4.10 (e) (council may override mayor's suspension or removal of directors) of the charter governs terminations.

Gibson's employment contract with the city provides that it can be extended "on a day to day or month to month basis in a separate written Agreement executed by both parties if approved by the City pursuant to the procedure allowed for by the Charter and Ordinances of the City." But neither the charter nor the ordinance provide a procedure for the extension of a city employee's contract. The procedure for the *employment* of a city employee, however, is governed by the charter - the mayor appoints and the city council confirms - which is consistent with both the ordinance's creation of the position of city administrator and city council's approval of the mayor's appointment of Gibson. While the ordinance provides that within 60 days of a vacancy, the mayor shall recommend candidates to fill the position which the city council can accept or reject, and the city council points to other language it claims gives it the authority hire and fire the city administrator, neither the language relied upon by the city nor any other language in the ordinance, resolution, or contract, can alter the mayor's authority to appoint a city employee pursuant to the charter. "What can not be done by an ordinance can not be done by contract." (Citation and punctuation omitted.) *CSX Transp. v City of Garden City*, 277 Ga. 248, 249 (1) (588 Ga. App. 688) (2003).

8

The city argues that because the employment contract was between Gibson and the city, and the charter granted the city council the power to contract on behalf of the city, the extension of Gibson's contract was within the city council's power. While pursuant to Section 1.12 (b) (7) of the charter, the city has the power to enter into contracts with private persons, that power is not unlimited. See *City of McDonough v. Campbell*, 289 Ga. 216, 218 (2) (710 SE2d 537) (2011). The contract here, for the position of city administrator, exists by virtue of the mayor's delegation of his authority and his power to appoint officers and employees of the city. Therefore any employment of Gibson, beyond what was provided for in the charter and ordinance, must be governed by the same procedure set forth in the charter for the mayor's delegation of authority and power to appoint. The city could not extend the mayor's delegation of his administrative powers without his permission to do so. Cf. id. (while charter allows city to enter into contracts of employment, it could not bind hands of successor councils). There is no evidence here that the mayor delegated his powers and authority to the position of city administrator after March 30, 2012, nor is there evidence of any appointment and confirmation of Gibson to the position after that date. Rather the evidence showed that the mayor expressly delegated his authority to the position through December 31, 2011, and acquiesced in the same through March 30, 2012.

9

In providing that employees of the city are appointed (and removed) by confirmation, the charter anticipates that the mayor and city council will act in concert. Neither party could act alone in the extension of Gibson's contract.[4] See *City of Jonesboro v. Shaw-Lightcap, Inc.*, 112 Ga. App. 890, 892 (1) (147 SE2d 65) (1966) (when charter authorized governmental action by mayor and council as a body, mayor could not act alone to bind city). The city was therefore without authority to unilaterally extend Gibson's contract beyond that date. See id.

Because the city council could not unilaterally extend Gibson's contract, the trial court did not err in concluding that any extension beyond March 30, 2012, was ultra vires, or void, and in granting the mayor the relief sought. See, e.g., *City of Baldwin v. Woodard & Curran*, 293 Ga. 19, 27 (2) (c) (743 SE2d 381) (2013) (city contract ultra vires and void where mayor signed but city council never approved as required by the city charter). This holding therefore requires us to consider the trial court's award of attorney fees.

---

[4]We note that Section 2.10 of the charter provides that the legislative authority of the government of the city, unless otherwise provided, is vested in a city council composed of the mayor and five councilmembers.

3. The city argues that the trial court erred in awarding the mayor attorney fees in the amount stated because the fees were not supported by competent evidence, and the authority allowing for fees should not apply to a city officer. The mayor's verified complaint contained a prayer for attorney fees and costs of litigation. The parties waived a hearing on the issue and agreed to present argument regarding attorney fees by brief and affidavit. The mayor's counsel then filed an affidavit asserting that the legal work he provided to the mayor amounted to $22,297.00 in attorney fees and $522.21 in costs, and that the amount billed to the mayor was "reasonable and appropriate in the legal marketplace." Attached to counsel's affidavit is an invoice listing the dates of service, the task completed, the hours expended, the cost for the hours expended, and the initials of the attorney who performed the task.

After consideration of the evidence, the trial court awarded the mayor $8,500 in attorney fees, less than half of the amount requested, in accordance with *Boswell*, supra, 274 Ga. 50. In *Boswell*, the Georgia Supreme Court held that

> a local government must pay a local official's attorney fees (1) when the official, acting in his official capacity, is required to hire outside counsel to assert a legal position the local government attorney cannot assert because he or she has a conflict arising from his or her representation of the local government, and (2) when the official is successful in asserting

11

his or her position. This is not because of any bad faith or improper conduct on the part of the local government. Rather, attorney fees in this instance are simply an expense of government operation.

(Citations, punctuation and footnotes omitted.) Id. at 52-53 (3).

The city urges this court to hold that because OCGA § 45-9-21 (e) (2) (defense of actions in lieu of insurance) applies to attorney fees specifically for a county officer, inter alia, we should interpret *Boswell* to apply only to a county officer. But *Boswell* does not rely upon this Code section for its holding and provides specifically that its rule applies to "an official, acting in his official capacity." Id. at 52 (3). *Boswell* relies upon *Gwinnett County v. Yates*, 265 Ga. 504, 508-509 (2) (458 SE2d 791) (1995), and *Griffies v. Coweta County*, 272 Ga. 506, 509 (2) (530 SE2d 718) (2000), neither of which is limited in its application. We find no authority limiting the application of *Boswell* only to county officers, and we decline to do so here.

The city argues that the evidence is insufficient because other attorneys' initials are noted on the invoice and those attorneys did not submit affidavits. But counsel averred that he was lead counsel in this case, and that the legal representation was performed by him and his firm. Counsel also stated that "the invoices attached to this Affidavit represent a true, correct, and accurate accounting of the time spent by myself

12

and my firm in this case and the expenses incurred." Counsel asserted further that "[t]he amount of time spent by this law firm in this matter was reasonable and necessary in relation to the dispute encountered between the Mayor and the City of Stockbridge." This was sufficient to establish that counsel had personal knowledge of the number of hours of work that had been performed by the members of his firm. See *Fulton County Bd. of Assessors v. Greenfield Investment Group*, 314 Ga. App. 523, 526 (2) (724 SE2d 828) (2012) (testimony presented by managing partner of firm that his partner did majority of work and of the reasonableness of his partner's rate, which he set, along with the firm's billing records, was sufficient evidence of amount of fees recoverable).

The city cites to *Paul v. Destito*, 250 Ga. App. 631 (550 SE2d 739) (2001), for the proposition that counsel's affidavit was inadmissible to prove the time spent by other attorneys. But this court in *Paul* affirmed the trial court's decision to grant a j.n.o.v. on the issue of the amount of attorney fees because there were no billing records or any other evidence describing how the attorneys spent their time, and counsel's cursory testimony regarding the number of hours other attorneys spent on the case and hours they charged was insufficient for a jury to calculate fees. Id. at 642 (9) (case remanded for rehearing on amount of expenses).

13

The city also complains that the affidavit did not describe the legal work or expenses, that some of the entries relate to other matters, and that the time entries on each day are not itemized by task. But the invoice contained entries that adequately described the tasks performed in this case and the time spent on each task that would support the trial court's award of $8,500. See *Greenfield Investment Group*, supra, 314 Ga. App. at 526 (2).

The trial court therefore did not abuse its discretion in concluding that the mayor was entitled to attorney fees pursuant to *Boswell*, because he was acting in his official capacity and was required to hire outside counsel to assert a legal position the city attorney could not assert on his behalf,[5] and, as we have held in Division 2 that the trial court did not err in granting the mayor injunctive and declaratory relief, he was successful in asserting his position. *Boswell*, supra, 274 Ga. at 52-53 (3).

*Judgment affirmed. Barnes, P. J., and Branch, J., concur*.

---

[5]The city attorney represented the city in this action.