**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0064, A25A0065. BYRD v. CITY OF POOLER.

RICKMAN, Presiding Judge.

Faced with conflicting legal opinions regarding the legal validity of a Mutual Separation Agreement ("MSA") executed between Robert H. Byrd, Jr., the outgoing City Manager of Pooler, and the outgoing Mayor and Council of Pooler (the "former Mayor and Council"), the City of Pooler, under the direction of the new Mayor and Council, filed a complaint for declaratory judgment, seeking a judicial determination of the validity of the MSA. Byrd filed a motion to dismiss the complaint, and the City filed a motion seeking a judgment on its complaint. The trial court denied the former and granted the latter.[1] Byrd then filed a notice of appeal and the City filed a motion

---

[1] In addition to seeking a declaratory judgment, the City also sought an injunction to prevent Byrd from using and/or transferring a City vehicle that he

for supersedeas bond, which the trial court granted. In Case No. A25A0064, Byrd appeals the trial court's denial of his motion to dismiss the City's declaratory judgment action and its grant of declaratory relief in favor of the City. In Case No. A25A0065, Byrd appeals from the trial court's grant of superseadeas bond. For the reasons that follow, we affirm the trial court's rulings in Case No. A25A0064 and dismiss as moot Byrd's appeal in Case No. A25A0065.

*Case No. A25A0064*

The relevant facts are as follows. Byrd became the City Manager for the City of Pooler in January 2014. In December 2023, Byrd and the former Mayor and Council executed the MSA in anticipation of Byrd's departure upon the swearing in of the new administration. The total value of the MSA severance was over $608,600, and included, inter alia, two years of salary and insurance benefits, payable to Byrd in installments spanning 24 months, as well an agreement to sell him a City vehicle for an agreed upon purchase price well below its fair market value. At some point prior to its execution, the City Attorney expressed concern to the former Mayor and

---

obtained pursuant to the terms of the MSA, but the trial court determined the City had an adequate remedy at law and, consequently, dismissed their claim for injunctive relief.

Council about the legal validity of the MSA and the former Mayor, herself an attorney, disagreed with the City Attorney's assessment. The MSA was executed and adopted by the former Mayor and Council.

The new Mayor and Council were sworn into office on January 4, 2024. Faced with conflicting legal opinions, the City filed the instant complaint for declaratory judgment in February 2024, seeking a judicial determination as to the legality of the MSA. Byrd filed a motion to dismiss the complaint, arguing that declaratory relief was not available to the City because after executing the MSA, there did not exist an actual or justiciable controversy. Alternatively, Byrd asserted that the MSA was authorized by law and/or was ratified by the new Mayor and Council. The City filed a motion seeking, in part, a ruling that, as a matter of law, the MSA violated OCGA § 36-30-3 (a) by binding a successor council and restricting the ability to freely legislate and was, therefore, void.[2]

The trial court issued an order denying Byrd's motion to dismiss the complaint, concluding that the declaratory judgment action was available under OCGA § 9-4-2

---

[2] Although entitled a "motion for judgment on the pleadings," the City's motion sought a judgment after the declarations requested in the complaint were made by the trial court.

3

(a) because there exists an actual case or controversy and, additionally, under OCGA § 9-4-2 (b), because the case involves taxpayer funds and "the ends of justice require the court to declare the rights and other legal relations of the parties to relieve [the City] from uncertainty." In a second order, the trial court granted the City's motion and declared that the MSA was void because it violated OCGA § 36-30-3 (a) by unlawfully binding the hands of a successor council. Byrd challenges both of the trial court's orders.

1. Byrd contends that the trial court erred by denying his motion to dismiss the complaint for lack of subject matter jurisdiction because the facts fail to meet the criteria necessary under OCGA § 9-4-2 to warrant declaratory relief. Specifically, he asserts that since the City had already executed and begun complying with the MSA, it was not unsure or insecure with regard to its rights under the contract.

The Declaratory Judgment Act affords the superior courts of this State the power, upon petition or other appropriate pleading, "to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed." OCGA § 9-4-2 (a), (b); see OCGA § 9-4-1 ("The purpose of [the Act] is to settle and afford relief from uncertainty and insecurity with

respect to rights, status, and other legal relations."). When passing the Act, the legislature explicitly directed that it be "liberally construed and administered." OCGA § 9-4-1. And "[c]ities, like other litigants, are entitled to avail themselves of declaratory relief under OCGA § 9–4–2." *City of Atlanta v. Hotels.com*, 285 Ga. 231, 234 (674 SE2d 898) (2009).

Subsection (a) of OCGA § 9-4-2 grants jurisdiction to the superior courts to issue declaratory judgments in cases of "actual controversy," and subsection (b) grants the courts power to issue judgments "in any civil case in which it appears to the court that the ends of justice require that the declaration should be made." Id.; see *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312, 314 (3) (66 SE2d 726) (1951). Thus, declaratory relief is authorized

> when there are circumstances showing a necessity for a determination of the dispute to guide and protect the [petitioner] from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to [petitioner's] alleged rights and which if taken without direction might reasonably jeopardize [its] interest.

(Citation and punctuation omitted.) *Georgia Carry.org v. Atlanta Botanical Garden*, 299 Ga. 26, 28 (1) (785 SE2d 874) (2016); see *Hotels.com*, 285 Ga. at 34 ("[T]o state a

claim for declaratory judgment, a party need only allege the existence of a justiciable controversy in which future conduct depends on resolution of uncertain legal relations."). "The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends." (Citation and punctuation omitted.) *GeorgiaCarry.org,* 299 Ga. at 28 (1).

Here, the City alleged in its complaint that an actual and justiciable controversy exists between itself and Boyd with respect to the legality of the MSA as agreed to by the prior administration. Specifically, the City believed the MSA to be ultra vires and void, rendering it necessary to terminate the agreement; yet, if the City ceased installment payments in violation of the contractual terms, it risked a lawsuit by Byrd — who had retained counsel prior to the City having filed the complaint — exposing itself and the taxpayers to protracted litigation. Under these circumstances, the trial court did not err in concluding that the City was in a position of uncertainty with respect to the MSA and in granting it declaratory relief. See generally OCGA § 9-4-2 (a), (b); *Upper Oconee Basin Water Auth. v. Jackson County*, 305 Ga. App. 409, 414 (2) (a) (699 SE2d 605) (2010) (holding that county stated a claim for declaratory relief against water authority where county alleged uncertainty as to its future rights to use

6

a reservoir under an intergovernmental agreement); *Slaughter v. Faust*, 155 Ga. App. 68, 69 (1) (270 SE2d 218) (1980) ("The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated."); see also *Acevedo v. Kim*, 284 Ga. 629, 632n (2) (669 SE2d 127) (2008) (holding that the trial court did not err by granting petitioner's request for clarification of his obligations under divorce decree when "he needed direction from a judicial tribunal to remove the uncertainty regarding the consequences of his planned future actions"). Compare *Sieg v. Pricewaterhousecoopers, LLP*, 246 Ga. App. 394, 396 (1) (539 SE2d 896) (2000) (holding declaratory judgment action improper because petitioner could not assert she faced risk of taking future undirected action when her rights under contract had already been established).

2. Byrd further argues that the trial court erred in declaring the MSA ultra vires and void.[3] Again, we disagree.

---

[3] Byrd contends that the City's "motion for judgment on pleadings" was premature under OCGA § 9-11-12 (c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." OCGA § 9-11-12 (c). As previously mentioned, however, although entitled a motion for judgment on the pleadings (a motion generally filed by defendants), the City's motion did nothing more than request that the trial court enter judgment in its favor after making the declarations requested in the complaint.

The trial court granted judgment in favor of the City upon concluding that the MSA violated Georgia law by unlawfully binding the successor council. OCGA § 36-30-3 (a) provides that, "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." It has long been established that this prohibition applies equally to both the enactment of ordinances and the execution of governmental contracts. See generally *Brown v. City of East Point*, 246 Ga. 144, 146 (268 SE2d 912) (1980); *Screws v. City of Atlanta*, 189 Ga. 839, 843 (2) (8 SE2d 16) (1940).

This case is similar to that of *City of McDonough v. Campbell*, 289 Ga. 216, 217 (1) (710 SE2d 537) (2011). *Campbell* involved the city passing a resolution authorizing and approving contracts with certain employees, including the city's chief building inspector, that were to be renewed automatically each year unless the city took affirmative action to terminate them, in which case the employees would be entitled to 12 months salary as severance pay, plus insurance and retirement benefits. See id. at 217 . Upon the election of a new mayor and several new council members, the city declared the contracts null and void. See id. Thereafter, the building inspector

demanded severance pay and, when the city refused to pay him under the contract, he filed suit. Id.

The Supreme Court held that the contract unlawfully bound the future council in violation of OCGA § 36-30-3 (a). In so doing, the Court emphasized that "[t]he intent of the prohibition [set forth in OCGA § 36-30-3 (a)] is to allow future municipal governments to legislate freely in matters such as operating budgets." Id. at 217 (1). Thus, "[t]o the extent that a governmental contract impinges on a municipality's ability to legislate freely, the contract is ultra vires and void." Id. Emphasizing the point, the Court continued:

> strictest scrutiny must be given to governmental actions which require increased appropriations or taxes by future governing authorities. The power to tax and the appropriating process are the lifeblood of any government. Their relationship is such that they are almost inseparable since the requirement to appropriate carries with it the corresponding requirement to raise the revenues to fund the appropriation. These powers will not be broadened in the absence of clear and valid enabling legislation. By the same token, the right of future elected officials to carry out the mandate of the electorate by exercising fiscal management must not be limited except by clear and valid legislation. The purpose and effect of the cases which comprise the evolution of this subject matter is to strike a balance in the public interest. On one side of the scale is the practical necessity of long range commitments and fair dealing by the

9

governing authority with persons contracting with a municipality. On the other side is the necessity of a public policy dictating that one governing authority must not be allowed to impose a long term mortgage upon the taxable assets of a political subdivision without clear and valid enabling legislation. If one city council is allowed to establish a series of pay increases extending to the terms of future councils, the balance of the scale could not be maintained.

(Citation and punctuation omitted.) Id. at 217-18 (1).

Like the contract in *Campbell*, the MSA in this case obligating the new Mayor and Council to pay a severance package totaling over $600,000, including two years salary plus benefits, unlawfully bound the new administration in violation of OCGA § 36-30-3 (a). Although *Campbell* involved an automatically-renewed contract, we do not view that as the determining factor in that case; rather, the successor council in *Campbell* was unlawfully restricted because the cost of terminating the employee was exorbitant, whereas the successor council here was restricted directly by the exorbitant and unavoidable expenditure of the severance. Both contracts impinged on the future councils' ability to legislate freely in matters such as their operating budgets and, consequently, were ultra vires and void. See OCGA § 36-4-30-3 (a); *Campbell*, 289 Ga. at 217-218 (1) .

10

We reject Byrd's contention that OCGA § 36-30-3 (a) does not apply because the MSA involved functions that were proprietary, as opposed to governmental, in nature. See *Unified Govt. of Athens-Clarke County v. Stiles Apts.,* 295 Ga. 829, 833 (764 SE2d 403, 407 (2014) ("[T]he prohibition [in OCGA § 36-30-3 (a)] generally applies to a municipality's governmental functions and not its proprietary functions"). A contract related to the separation of a City employee involves the City's governmental functions. Compare *Campbell* 298 Ga. at 219 (3) (the contract at involving employee severance "is both governmental and financial") with *Stiles Apts.,* 295 Ga. 829, 833 (3) (contract "to relieve traffic congestion on a public street via the construction and maintenance of a sidewalk and parking area is proprietary").

Likewise, we disagree with Byrd's assertion that the general authority to contract granted to the City under its charter[4] places the MSA into the "expressly authorized" exception to OCGA § 36-30-3 (a). See *Campbell* 298 Ga. at 218 (2) (holding that a city's charter-granted power to contract generally "falls far short of expressly authorizing automatically renewable contracts containing substantial

---

[4] The City's charter authorized it "[t]o enter into contracts and agreements with other governments and entities and with private persons, firms, and corporations."

severance packages which have the effect of binding the hands of successor councils"); *City of Stockbridge v. Stuart*, 329 Ga. App. 323, 327 (2) (765 SE2d 16) (2014). Compare *City of Athens v. McGahee*, 178 Ga. App. 76, 79 (341 SE2d 855) (1986) (severance contracts authorized when the charter conferred broad authority upon the city to "establish a pension system ... upon such terms and conditions as the Mayor and Council . . . shall deem proper . . .").

Lastly, Byrd's argument that the new Mayor and Council ratified the MSA lacks merit. As held by the trial court and affirmed by this Court, the MSA violated OCGA § 36-3-3 (a) and is, therefore, ultra vires and void. "A void contract is one that has no effect whatsoever and is incapable of being ratified." *Stoudemire v. HSBC Bank USA*, 333 Ga. App. 374, 375 (776 SE2d 483) (2015).

For these reasons, we affirm the trial court orders denying Byrd's motion to dismiss and granting declaratory judgment in favor of the City.

*Case No. A25A0065*

In Case No. A25A0065, Byrd appeals from the trial court's grant of the City's motion for supersedeas. That issue is now moot and the appeal is dismissed.

*Judgment affirmed in Case No. A25A0064. Appeal dismissed in Case No. A25A0065. Davis, J., concurs. Gobeil, J., concurs fully in Division 1 and concurs in Judgment Only in Division 2.*