## A96A0927. CITY OF BUCHANAN v. POPE et al.
(476 SE2d 53)

SMITH, Judge.

Jimmy V. Pope served as the Chief of Police of the City of Buchanan, Georgia for approximately 21 years. In November 1993, the Mayor and Council of the City voted not to renew Pope's term of employment under the city charter. The City then brought this declaratory judgment action seeking clarification of a potential conflict between Pope's employment status under the charter and the provisions of a personnel manual drafted by Pope for the police department and adopted by the City.

Pope answered and counterclaimed for defamation and intentional infliction of emotional distress. He also filed a separate civil action reasserting the claims made in his counterclaim and asserting claims of due process and equal protection under 42 USC § 1983, contending his employment with the City had been wrongfully terminated. His wife brought a claim for loss of consortium. The trial court dismissed the claim for declaratory judgment, consolidated the actions, and realigned the parties to show the Popes as plaintiffs and the City as defendant.

Pope claims a right of continuing employment constituting a property interest under the terms of the police department "policies and procedures" manual. Pope relies on the provisions found under the general heading of "S.O.P. [Standard Operating Procedures] DISCIPLINE." Item (1) (D), "Dismissal," provides: "No permanent employee may be dismissed except for cause. The Chief of Police may recommend dismissal to the City Council, but only the City Council may dismiss a permanent employee. A permanent [employee] being dismissed must be notified of the cause." Pope contends, in essence, that the manual grants him permanent tenure in his employment during good behavior, unless he chooses to resign.

The City contends that it did not terminate Pope, but simply determined that his 12-month term of employment would not be renewed when it expired. The City relies on Section 16 of the city charter: "[S]aid council shall be authorized to employ such police officers as they may see fit for the proper police protection of said city, which officers shall be known and designated as marshals, or marshals and deputy marshals as may be provided by said ordinance, and *who shall be elected for such term not exceeding twelve months as the council may see fit*, and who shall receive such compensation as may be fixed by the council, and who shall be directly responsible and accountable to the mayor of said city and subject to his orders. . . ." (Emphasis supplied.) Ga. Laws 1908, pp. 468, 475. According to the City, the provisions of the manual by their terms apply only to dismissal for cause, not to failure to renew the term of a

city officer.

The trial court found that the police department manual provisions were "adopted . . . as a supplement to [the City's] employment provisions under § 16" and "evince sufficient 'mutually explicit understandings' of Pope's continued employment to satisfy Pope's burden" of proof. The trial court granted the City's motion for summary judgment on Pope's claims of defamation and intentional infliction of emotional distress, but it concluded that issues of fact existed as to the remaining counts and denied the City's motion for summary judgment.

Interpretation of statutes, ordinances, and charters, however, presents a question of law for the court. *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 600 (4) (327 SE2d 736) (1985). The issue of whether the City's charter or the personnel manual controls Pope's employment is also a question of law. Under Georgia law, to the extent, if any, that the provisions of the personnel manual conflict with those of the City charter, the charter must prevail. For this reason, we conclude that the trial court erred in denying the City's motion for summary judgment.

1. In considering these various enactments, we must apply the principal rules of statutory construction. It is axiomatic that if an enactment is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b). We must seek "to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. [Cits.]" *Moritz v. Orkin Exterminating Co.*, 215 Ga. App. 255, 256-257 (450 SE2d 233) (1994). " '[A] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.' [Cit.]" *Bennett v. Wood*, 188 Ga. App. 630, 632 (1) (373 SE2d 645) (1988). Finally, "[i]t is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (Citations and punctuation omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994). These principles apply in the interpretation of city or county ordinances as well as statutes. See, e.g., *Hogan v. DeKalb County*, 196 Ga. App. 728, 729 (397 SE2d 16) (1990) (harmonizing provisions of county sanitation ordinance in accordance with general statutory rule).

(a) Turning to the provisions of the police department manual

relied upon by Pope, we find that by their terms they pertain to "discipline," e.g., "(a) reprimand, (b) suspension without pay, (c) probation, [or] (d) dismissal" rather than to nonrenewal of a term of employment. Moreover, the disciplinary provisions contained in the police department manual were largely administered by Pope himself, as chief of police, either by making a disciplinary decision himself or by making a disciplinary recommendation to the City Council. Reading the police department manual in light of the rules of construction described previously, it is apparent that Pope was not "dismissed" within the meaning of the manual's chapter on discipline. This interpretation also harmonizes the provisions of the manual with § 16 of the City's charter, limiting the application of the manual's provisions to discipline imposed within the term of an officer's service.

The distinction between termination and nonrenewal has been recognized by federal courts in interpreting wrongful discharge claims under Georgia law. For example, in *Hudgins v. City of Ashburn*, 890 F2d 396 (11th Cir. 1989), a city clerk brought a § 1983 action claiming wrongful discharge under the City's personnel management plan. The Eleventh Circuit rejected her claim, in part because the plan specifically excepted the plaintiff's position of city clerk. The court also noted, however, that the city's Code was "explicit and unambiguous" in its provision of a one-year term for the city clerk, 890 F2d at 405, that the city clerk was not fired but "simply was not re-elected as city clerk," 890 F2d at 407, n. 21, and that she had no property interest in continued employment as the city clerk. Id.[1]

(b) Moreover, Pope's contention that the police department manual creates permanent tenure in a position upon good behavior is in direct conflict with the term of office provided by the City's charter, and the charter must prevail. Under OCGA § 36-35-3 (a), municipal corporations have the power to adopt only "clearly reasonable ordinances, resolutions or regulations . . . for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto." Moreover, "[a]ny such charter provision shall remain in force and effect until amended or repealed." Id.

The Georgia Supreme Court has interpreted this Code provision to invalidate municipal ordinances inconsistent with a city's charter. In *Ga. Branch &c. Contractors v. City of Atlanta*, 253 Ga. 397 (321 SE2d 325) (1984), contractors challenged the City of Atlanta's minor-

---

[1] While this and other cited federal decisions are not binding authority on this Court, they are consistent with and rely on Georgia authority, and we find their reasoning persuasive.

ity set-aside ordinance, contending it violated the city charter's requirement that contracts be let to the "lowest and/or best bidder." The Supreme Court agreed, holding that the city ordinance must yield to the legislative mandate in the charter and that the ordinance was therefore void. 253 Ga. at 398-399 (2).

The federal courts have also agreed that a city's charter must control where inconsistent with personnel regulations. In *Waters v. Buckner*, 699 FSupp. 900, 902 (N.D. Ga. 1988), aff'd, 889 F2d 274 (11th Cir. 1989), the district court considered a City of Canton charter provision that any officer elected or employed by the Mayor and City Council could be terminated "with or without cause." The district court held that this charter provision prevailed over personnel regulations: "The plaintiff appears to argue and allege that the defendants failed to follow personnel regulations in city ordinances and that he was fired for an improper cause. However, as discussed above, the city charter controlled on the terms of his employment. Any part of the personnel regulations that purport to say the police chief can only be fired for cause, which plaintiff has failed to point out to the court, would be void under Georgia law. City ordinances which are inconsistent with a city charter are void. [Citing *Ga. Branch*, supra.]" 699 FSupp. at 903. Pope's contention that *Waters* is distinguishable because he, unlike Waters, has pointed out a personnel regulation stating he can only be fired for cause, is without merit. *Waters* plainly states that such a regulation, even if pointed out, would nevertheless be void under Georgia law.

(c) The theory of "mutual explicit understanding" relied on by the trial court is based on the companion United States Supreme Court cases of *Board of Regents &c. v. Roth*, 408 U. S. 564 (92 SC 2701, 33 LE2d 548) (1972), and *Perry v. Sindermann*, 408 U. S. 593 (92 SC 2694, 33 LE2d 570) (1972). Under those decisions, the parties to an employment contract may create a constitutional property interest by mutual understanding. Pope ignores, however, the clear limitation on this theory that " 'the sufficiency of the claim of entitlement must be decided by reference to state law.' *Bishop v. Wood*, 426 U. S. 341 (96 SC 2074, 48 LE2d 684) (1976)." *Morley's Auto Body v. Hunter*, 70 F3d 1209, 1213 (11th Cir. 1995). The decisions of the federal courts have recognized that no "understanding" can create a property interest contrary to state law. *Warren v. Crawford*, 927 F2d 559, 564 (11th Cir. 1991).

Since any "understanding" that Pope had a property interest in his employment was contrary to the provision of the City's charter that his term of service was for no more than 12 months, it would be contrary to state law as embodied in the charter. Such an understanding therefore cannot form a basis for a claim of wrongful discharge, and the trial court erred in so holding.

(d) Pope contends that the City is estopped from relying on § 16 of the charter because it has not abided by all the terms of its charter in the past. In particular, he complains that the City has not enforced the 12-month term of office in the past, that § 16 of the charter should not apply to him because the City does not use the designation of "marshals" as used in that section, and that § 16 should not apply to him because he is in actuality a "special police officer" under § 10 of the charter.[2] This argument ignores the long-standing rule that "[p]owers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. While a municipal corporation may be estopped where the act relied on, though irregular, was within its charter powers, there can be no estoppel where the act is ultra vires. *City of Calhoun v. Holland*, 222 Ga. 817, 819 (152 SE2d 752) (1966). In other words, "a governing authority cannot be estopped as the result of an ultra vires act on the part of one of its officers." (Citations, punctuation, and emphasis omitted.) *City of LaGrange v. USAA Ins. Co.*, 211 Ga. App. 19, 21 (2) (438 SE2d 137) (1993). See also *Warren v. Crawford*, supra (informal custom of notice and hearing cannot create property interest in employment contrary to state law).

Any earlier failure or refusal of the City to obey the terms of its charter was ultra vires. Pope cannot rely on such acts on the part of the City to estop it from asserting the provisions of its charter in this case.

2. Pope also contends that certain statutes governing municipalities are in conflict with the Buchanan City Charter and thus prevail as a general law over a special law. He refers to provisions authorizing municipal corporations to "define, regulate, and alter the powers, duties, qualifications, compensation, and tenure of all municipal officers, agents, and employees," OCGA § 36-34-2 (2), and to create a merit system, OCGA § 36-34-2 (4). He further asserts that the police manual itself constitutes a merit system for the police department, thereby creating a property interest in his continued employment.

This somewhat circular reasoning has no merit. Even if the police department manual is construed as a "merit system," it remains in conflict with the term limit provisions of the City's charter. See Division 1 (b), supra. A statute giving *authority* to a city to

---

[2] The trial court expressly ruled against Pope on the last assertion, and Pope neither appealed nor cross-appealed that ruling. Moreover, there is no evidence that Pope was a special police officer "who is not a member of a permanent and organized police force, but who merely engages to do temporary police duty in a particular place or on a special occasion." 62 CJS, Municipal Corporations, § 568 (1949). See also *Talley v. State*, 129 Ga. App. 479, 481 (2) (199 SE2d 908) (1973) (special deputy sheriff); *Atlantic Coast Line R. Co. v. Wegner*, 90 Ga. App. 267, 272 (83 SE2d 58) (1954) (special law enforcement officer for railroad).

enact legislation in certain areas cannot itself supersede inconsistent provisions in the city's existing charter, nor does it authorize the city to enact legislation that is in conflict with the existing charter. The statute merely grants to cities the authority to enact legislation in certain areas. It "was intended to allow municipalities to exercise certain power themselves, OCGA § 36-34-1 (3) . . . , not to define the means by which the cities would and could manage their affairs. . . . In short, the . . . act was intended to delegate power, not regulate its exercise." *Sadler v. Nijem*, 251 Ga. 375, 378 (3) (306 SE2d 257) (1983). The City must amend its charter in proper form to institute a merit system which conflicts with the current terms of its charter.

Moreover, OCGA § 36-35-7 specifically provides that "[a]ny provision of any municipal charter heretofore enacted covering subject matters over which municipal corporations are authorized to act pursuant to this chapter shall be amended, modified, superseded, or repealed only in accordance with subsection (b) of Code Section 36-35-3 [dealing with amendment of municipal charters]." The police department manual was never adopted by the City as an amendment to the City's charter.

In summary, if the "discipline" provisions of the City of Buchanan police department manual are interpreted as a disciplinary scheme rather than as a merit system or a grant of permanent tenure, then they do not conflict with the City's charter setting a maximum term of office for the City's police chief. The interpretation advocated by Pope, however, directly conflicts with § 16 of the charter, and the charter must prevail over that interpretation. If the term of office established by the charter is no longer consistent with the City's employment policies, it may be amended to set such terms of office as the City sees fit.[3] The charter cannot, however, be ignored.

3. Pope, both below and on appeal, has based his liberty due process and contractual claims, as well as his property due process claims, exclusively on the disciplinary provisions of the police department manual, and he has made no separate argument with respect to these additional claims. The trial court likewise based its decision entirely on the theory of a "mutual explicit understanding" allegedly created by the manual. Since we have held that the City's charter, not the manual, controls the term of Pope's employment, these claims must also fail.

Pope's equal protection claim, though never treated separately by Pope or by the trial court, must be analyzed under a different standard, a standard which Pope has failed to meet. Pope has shown

---

[3] While the current Buchanan City Charter was enacted in 1908, it has been amended numerous times, including as recently as 1995. Section 16, however, has never been amended or repealed.

neither disparate treatment of persons similarly situated nor purposeful discrimination.[4] See generally *Spencer v. McCarley Moving &c. Co.*, 174 Ga. App. 525, 528 (330 SE2d 753) (1985). Gloria Pope's derivative claim for loss of consortium must likewise fail. *Rogers v. Fred R. Hiller Co. of Ga.*, 214 Ga. App. 448, 450 (3) (448 SE2d 46) (1994). The trial court erred, therefore, in failing to grant the City's motion for summary judgment in its entirety.

*Judgment reversed. Pope, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 11, 1996.

*Elarbee, Thompson & Trapnell, Walter O. Lamberth, Jr., Richard R. Gignilliat, Richard C. Sutton,* for appellant.
*Ted B. Herbert,* for appellees.

---

[4] By failing to respond to the City's factual assertions in this regard, Pope has consented to their accuracy. Court of Appeals Rule 27 (b) (1).