**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 16, 2017**

# In the Court of Appeals of Georgia

A17A1524. LATHAN v. HOSPITAL AUTHORITY OF CHARLTON COUNTY.

BARNES, Presiding Judge.

Faleshia C. Lathan, as the surviving spouse and personal representative of the estate of Robert Lathan, Jr., brought this medical malpractice and wrongful death suit against the Hospital Authority of Charlton County d/b/a Charlton Memorial Hospital (the "Hospital Authority") and several other defendants, contending that the suit was a valid renewal of a prior suit that had been voluntarily dismissed. The Hospital Authority sought dismissal of the plaintiff's wrongful death and loss of consortium claims, arguing that the statute of limitation had expired on those claims, and that the present suit was not a valid renewal action because service had not been properly perfected on the Hospital Authority in the prior suit before its voluntary dismissal. The trial court agreed with the Hospital Authority and dismissed the plaintiff's wrongful death and loss of consortium claims with prejudice. The trial court

thereafter entered final judgment in favor of the Hospital Authority on those claims and subsequently denied the plaintiff's motion for reconsideration and motion to amend her complaint. This appeal by the plaintiff followed.

The central question in this appeal is whether service of process was properly perfected on the Hospital Authority in the prior wrongful death suit brought by the plaintiff, rendering the present suit a valid renewal action. Resolution of that question turns on whether the Hospital Authority is the type of corporation that can be served under OCGA § 9-11-4 (e) (1) (A) of the Georgia Civil Practice Act ("Rule 4"), which authorizes service on the president, other officer, managing agent, or registered agent of a "corporation incorporated . . . under the laws of this state" or substitute service on the Secretary of State if those methods of service are unsuccessful. For the reasons discussed more fully below, we answer that question in the negative and affirm the trial court.

This case arose out of the care and treatment that Mr. Lathan ("the decedent") received at Charlton Memorial Hospital on February 3, 2013. As alleged in the complaint, on the afternoon of the day in question, the decedent arrived in the emergency department at Charlton Memorial Hospital with complaints of sharp epigastric pain. Dr. Ayodele A. Ayedun, an emergency medicine physician, examined

2

the decedent, diagnosed him with gastritis, and discharged him from the hospital. The next evening, the decedent returned to the emergency room at Charlton Memorial Hospital in cardiac arrest. He was transported to another hospital, where he remained an inpatient until his death on February 11, 2013.

Charlton Memorial Hospital was operated by the Hospital Authority, a "public body corporate and politic" established in 1970 under an ordinance adopted by the Charlton County Board of Commissioners. In August 2013, several months after the decedent's treatment, Charlton Memorial Hospital suspended services and closed its doors.

On January 20, 2015, the decedent's wife, acting in her capacities as the decedent's surviving spouse and as representative of his estate, commenced a medical malpractice and wrongful death suit against several defendants, including Dr. Ayedun and the Hospital Authority (the "original suit"). The plaintiff also asserted a loss of consortium claim in her capacity as the surviving spouse of the decedent. Among other allegations, the complaint in the original suit alleged that the decedent had been misdiagnosed with gastritis in the hospital emergency room on February 3, 2013, proximately resulting in the decedent suffering catastrophic cardiac injuries and death.

The day after filing the original suit, the plaintiff sought to perfect service on the Hospital Authority by serving John Adams, a member of its board who also served as its legal counsel. The Hospital Authority answered the original suit by special appearance and raised the defense that it had not been properly served with process. The plaintiff thereafter voluntarily dismissed the original suit in July 2015.

On January 4, 2016, the plaintiff commenced the current suit against Dr. Ayedun and the Hospital Authority for medical malpractice, wrongful death, and loss of consortium (the "current suit").[1] Between the time the original suit was voluntarily dismissed and the current suit was filed, the two-year statute of limitation had expired on the plaintiff's wrongful death and loss of consortium claims brought in her capacity as the decedent's surviving spouse (collectively, "the wrongful death claims"),[2] but not on the pre-death medical malpractice claims brought in her capacity

---

[1] The plaintiff named other defendants who were later voluntarily dismissed from the current suit.

[2] The limitation period for a wrongful death claim arising out of medical malpractice is two years. *Wesley Chapel Foot & Ankle Center v. Johnson*, 286 Ga. App. 881, 884-885 (650 SE2d 387) (2007). See OCGA § 9-3-71 (a). Similarly, "plaintiffs bringing loss of consortium actions which arise out of medical malpractice have only two years in which to file their claims." (Punctuation and footnote omitted.) *Beamon v. Mahadevan*, 329 Ga. App. 685, 688 (2) (766 SE2d 98) (2014). See OCGA §§ 9-3-33; 9-3-34.

4

as the representative of the decedent's estate.[3] The plaintiff sought to perfect service on the Hospital Authority in the current suit by again serving its board member and legal representative, Adams. The plaintiff also served the Hospital Authority's former and current chief executive officers ("CEO"), who had not been served in the original suit.

The Hospital Authority filed a special appearance and answer to the current suit in which it raised several defenses, including a statute-of-limitation defense. The Hospital Authority also filed a motion to dismiss the plaintiff's wrongful death claims on the ground that those claims were barred by the applicable two-year statute of limitation. Specifically, the Hospital Authority noted that the current suit had been filed after the limitation period had expired on the wrongful death claims, and it argued that the current suit could not be treated as a renewal of the original suit

---

[3] It is undisputed that the limitation period for the plaintiff's pre-death medical malpractice claims, brought in her capacity as the representative of the decedent's estate, had not expired when the current suit was filed because those claims were tolled until the plaintiff was appointed as the estate's personal representative. See OCGA § 9-3-92 ("The time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years. . . ."); *Goodman v. Satilla Health Svcs.*, 290 Ga. App. 6, 7 (658 SE2d 792) (2008) (OCGA § 9-3-92 applies to medical malpractice claims brought by personal representative of estate).

because service had not been properly perfected on the Hospital Authority in the original suit before that suit was voluntarily dismissed. In this regard, the Hospital Authority contended that hospital authorities are governmental entities that must be served in accordance with OCGA § 9-11-4 (e) (5) of the Georgia Civil Practice Act, which requires service on the CEO or clerk of a "public body or organization." Because Adams rather than the Hospital Authority's CEO or clerk had been served in the original suit before it was voluntarily dismissed by the plaintiff, the Hospital Authority asserted that the original suit was void, and that, as a result, the current suit could not be treated as a valid renewal action for statute-of-limitation purposes. Accordingly, the Hospital Authority argued that the plaintiff's wrongful death claims asserted in the current suit should be dismissed with prejudice as barred by the statute of limitation.

Opposing the Hospital Authority's motion to dismiss the wrongful death claims, the plaintiff argued that the current suit was a proper renewal of the timely filed original suit. The plaintiff contended that the Hospital Authority had been properly served before the original suit was voluntarily dismissed, and that, as a result, the original suit was not void and was subject to renewal. In arguing that service was properly perfected on the Hospital Authority in the original suit, the

plaintiff maintained that hospital authorities are public corporations formed under Georgia law and thus can be served under OCGA § 9-11-4 (e) (1) (A), which authorizes service on the president, other officer, managing agent, or registered agent of a "corporation incorporated . . . under the laws of this state" or substitute service on the Secretary of State if those methods of service are unsuccessful. According to the plaintiff, Adams was an officer of the Hospital Authority and thus was properly served under OCGA § 9-11-4 (e) (1) (A) in the original suit.

The trial court agreed with the Hospital Authority, concluding that hospital authorities are public bodies or organizations that must be served in accordance with OCGA § 9-11-4 (e) (5) rather than OCGA § 9-11-4 (e) (1) (A) and dismissing the plaintiff's wrongful death claims with prejudice. Pursuant to OCGA § 9-11-54 (b),[4] the trial court thereafter entered final judgment in favor of the Hospital Authority on the plaintiff's wrongful death claims. The plaintiff's claims against Dr. Ayedun, as well as the plaintiff's pre-death medical malpractice claims brought against the

---

[4] OCGA § 9-11-54 (b) provides in part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . .

7

Hospital Authority in her capacity as representative of the decedent's estate, remain pending.

After the entry of final judgment on the wrongful death claims, the plaintiff filed a motion for reconsideration and to amend the complaint. The plaintiff sought to amend her complaint to reinstate the same wrongful death claims, but under a different legal theory as to why they were not barred by the applicable statute of limitation. The trial court denied the motion for reconsideration and to amend the complaint, leading to this appeal by the plaintiff.

1. The plaintiff argues that the trial court erred in dismissing with prejudice her wrongful death claims as barred by the two-year statute of limitation because the current suit was a properly filed renewal action of the voluntarily dismissed original suit, such that the wrongful death claims remained viable even though the limitation period had expired in the interim between the current and original suit. We are unpersuaded.

"As we have held, a properly filed renewal action stands on the same footing as the original action with respect to statutes of limitation," and, therefore, if the "renewal action is properly filed within six months after dismissal of the original action, it remains viable even though the statute of limitation may have expired."

(Citations and punctuation omitted.) *Blier v. Greene*, 263 Ga. App. 35, 36 (1) (a) (587 SE2d 190) (2003). See OCGA § 9-2-61 (a). The plaintiff's current suit was filed within six months of the voluntary dismissal of the original suit. That, however, does not end our inquiry.

> [T]o show the right to renew the suit within six months after the dismissal of a prior suit on the same cause of action, when such right is relied upon to relieve the plaintiff of the bar of the statute of limitation, it is necessary for the renewal petition to show affirmatively that the former petition was not a void suit[.]

(Punctuation and footnote omitted.) *Belcher v. Folsom*, 258 Ga. App. 191, 192 (573 SE2d 447) (2002). See *Whitesell v. Ga. Power Co.*, __ Ga. App. __ (1) (Case No. A17A0590, decided April 20, 2017). The original suit was void if service was never properly perfected, "and a void lawsuit cannot be renewed outside the period of limitation." *Coles v. Reese*, 316 Ga. App. 545, 546 (730 SE2d 33) (2012). See *Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994) ("The original suit is void if service was never perfected, since the filing of a complaint without perfecting service does not constitute a pending suit.").

As previously noted, the plaintiff served Adams, one of the Hospital Authority's board members and its legal representative, in the original suit. The

9

plaintiff does not dispute that Adams was neither the CEO nor the clerk of the Hospital Authority, and thus service undisputedly was not perfected on the Hospital Authority in accordance with OCGA § 9-11-4 (e) (5),which requires service on the CEO or clerk of a "public body or organization."[5] The plaintiff, however, argues that the Hospital Authority is a public corporation which can alternatively be served under OCGA § 9-11-4 (e) (1) (A) ("Rule 4 (e) (1) (A)"),[6] and that service on Adams in the original suit therefore was proper because Rule 4 (e) (1) (A) authorized service on any "officer" of the Hospital Authority. We disagree with the plaintiff because the plain language of Rule 4 (e) (1) (A), read in pari materia with other relevant statutory provisions, reflects that its mode of service does not apply to the Hospital Authority.

---

[5] OCGA § 9-11-4 (e) (5) provides:
Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: . . . If against a county, municipality, city, or town, to the chairman of the board of commissioners, president of the council of trustees, mayor or city manager of the city, or to an agent authorized by appointment to receive service of process. *If against any other public body or organization subject to an action, to the chief executive officer or clerk thereof.*
(Emphasis supplied.)

[6] The methods of service set forth in OCGA § 9-11-4 (e) are cumulative. See OCGA § 9-11-4 (j) ("The methods of service provided in this Code section are cumulative and may be utilized with, after, or independently of other methods of service. . . .").

10

In determining the scope and meaning of Rule 4 (e) (1) (A), we apply certain well-established rules of statutory construction.

> [I]f an enactment is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. We must seek to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. Finally, it is a basic rule of construction that a statute . . . should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.

(Citations and punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996).

Mindful of these interpretive principles, we turn to Rule 4 (e) (1) (A), which establishes methods for serving certain corporations with process:

> Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: . . . If the action is against a corporation incorporated or domesticated under the laws of this state or a foreign corporation authorized to transact business in this state, to the

11

president or other officer of such corporation or foreign corporation, a managing agent thereof, or a registered agent thereof, provided that when for any reason service cannot be had in such manner, the Secretary of State shall be an agent of such corporation or foreign corporation upon whom any process, notice, or demand may be served. Service on the Secretary of State of any such process, notice, or demand shall be made by delivering to and leaving with him or her or with any other person or persons designated by the Secretary of State to receive such service a copy of such process, notice, or demand, along with a copy of the affidavit to be submitted to the court pursuant to this Code section. The plaintiff or the plaintiff's attorney shall certify in writing to the Secretary of State that he or she has forwarded by registered mail or statutory overnight delivery such process, service, or demand to the last registered office or registered agent listed on the records of the Secretary of State, that service cannot be effected at such office, and that it therefore appears that such corporation or foreign corporation has failed either to maintain a registered office or to appoint a registered agent in this state. Further, if it appears from such certification that there is a last known address of a known officer of such corporation or foreign corporation outside this state, the plaintiff shall, in addition to and after such service upon the Secretary of State, mail or cause to be mailed to the known officer at the address by registered or certified mail or statutory overnight delivery a copy of the summons and a copy of the complaint. Any such service by certification to the Secretary of State shall be answerable not more than 30 days from the date the Secretary of State receives such certification.

OCGA § 9-11-4 (e) (1) (A).

By its plain and unambiguous language, Rule 4 (e) (1) (A) applies only to corporations that are "incorporated or domesticated under the laws of this state" or to foreign corporations that are "authorized to transact business in this state." Domestication is a procedure formerly available to foreign corporations that is now addressed by OCGA § 14-2-1540 and has no bearing here. See 1 Kaplan's Nadler, Georgia Corporations, Limited Partnerships & Limited Liability Companies § 3:34 (Oct. 2016 Update); *Image Mills v. Vora*, 146 Ga. App. 196, 198-199 (1) (245 SE2d 882) (1978). Nor is the Hospital Authority a foreign corporation authorized to transact business in Georgia. The relevant question in the present case therefore is whether the Hospital Authority is a corporation "incorporated . . . under the laws of this state" for purposes of Rule 4 (e) (1) (A). We conclude that it is not.

Rule 4 (e) (1) (A) does not define what it means for a corporation to be "incorporated . . . under the laws of this state" for purposes of service of process under the rule. Incorporation can refer to the delivery of articles of incorporation or other organizational documents to the Secretary of State of Georgia, who then files those documents, as occurs, for example, with the formation of for-profit and nonprofit corporations under Title 14 of the Georgia Code. See OCGA §§ 14-2-201

13

to 14-2-207; 14-3-201 to 14-3-207. Incorporation also can refer more generally to the formation of a corporation by any legal means. See Black's Law Dictionary (10th ed. 2014) ("incorporate" means "[t]o form a legal corporation"). We conclude that the more narrow definition of incorporation applies here.

When Rule 4 (e) (1) (A) is read as a whole and in pari materia with other related statutory provisions, it is clear that the rule was intended by the legislature to refer to Georgia corporations formed by the delivery and filing of articles of incorporation or other similar organizational documents with the Secretary of State. Rule 4 (e) (1) (A), after providing that it applies to corporations incorporated under Georgia law, further provides that "the Secretary of State *shall* be an agent of such corporation" where the other service methods have failed, upon the plaintiff making certain certifications to the Secretary. (Emphasis supplied.) And one of the certifications that must be made by the plaintiff is "that he or she has forwarded by registered mail or statutory overnight delivery such process, service, or demand *to the last registered office or registered agent listed on the records of the Secretary of State*." (Emphasis supplied.) Read as a whole so as not to render any of its language mere surplusage, Rule 4 (e) (1) (A) contemplates that a "corporation incorporated .

14

. . under the laws of this state" would have been required to submit information regarding its registered office and registered agent to the Secretary of State.

Notably, under Georgia law, the articles of incorporation submitted to the Secretary of State by for-profit and nonprofit corporations must identify a registered office and registered agent for the corporation. See OCGA §§ 14-2-202 (a) (3); 14-3-202 (a) (2).[7] Hence, when Rule 4 (e) (1) (A) is read in conjunction with other statutory provisions pertaining to the incorporation of Georgia corporations, a "corporation incorporated . . . under the laws of this state" in Rule 4 (e) (1) (A) must refer to a corporation formed through incorporation procedures involving the submission of documents identifying a registered office and registered agent to the Secretary of State, which would include corporations formed through the delivery and filing of articles or incorporation or other similar organizational documents with the Secretary. The Hospital Authority, however, is not such a corporation.

Hospital authorities have been described as both governmental instrumentalities and as public corporations, and they have characteristics of both types of entities. See *Crosby v. Hosp. Auth. of Valdosta & Lowndes County*, 93 F3d

---

[7] For-profit and nonprofit corporations thereafter may change their registered offices or registered agents through an amendment to their annual registration delivered to the Secretary of State. See OCGA §§ 14-2-502 (a); 14-3-502 (a).

15

1515, 1524 (II) (B) (11th Cir. 1996) (noting that "Georgia public purpose authorities [such as hospital authorities] are unique entities, lying somewhere between a local, general-purpose governing body (such as a city or county) and a corporation").[8] However, hospital authorities are not formed in the same manner as for-profit or nonprofit corporations organized under Chapter 14 of the Georgia Code. Rather, the

---

[8] See, e.g., OCGA §§ 31-7-71 (1) (defining "hospital authority" as "any public corporation created by this article"); 31-7-75 (stating that "[e]very hospital authority shall be deemed to exercise public and essential governmental functions" and listing several powers of hospital authorities, including the power in subsection (21) "[t]o exercise any or all powers now or hereafter possessed by private corporations performing similar functions"); *Martin v. Hosp. Auth. of Clarke County*, 264 Ga. 626, 626 (449 SE2d 827) (1994) (describing a hospital authority as a "governmental entity"); *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39, 45-46 (273 SE2d 841) (1981) (determining that a hospital authority is a "governmental entity"); *Fulton-DeKalb Hosp. Auth. v. Gaither*, 241 Ga. 572, 575 (247 SE2d 89) (1978) (hospital authorities "are public corporations having for their object the administration of a portion of the powers of government delegated to it, and are not business corporations"); *Kendall v. Griffin-Spalding County Hosp. Auth.*, 242 Ga. App. 821, 822-823 (2) (531 SE2d 396) (2000) ("The functions and powers of a hospital authority are established in OCGA § 31-7-75, which vests an authority with 27 specific grants of power that permit it to act as a corporation by, for example, entering into contracts, buying or selling property, and selecting officers."); *Dept. of Human Resources v. Northeast Ga. Primary Care*, 228 Ga. App. 130, 132 (1) (491 SE2d 201) (1997) (noting that a hospital authority has been described as a "governmental instrumentality" that, at the same time, "is not an agency or department of either the state or county because it is a public, non-profit corporation").

16

formation of a hospital authority for each county is governed by OCGA § 31-7-72, which provides in relevant part:

> There is created in and for each county and municipal corporation of the state a public body corporate and politic to be known as the "hospital authority" of such county or city, which shall consist of a board of not less than five nor more than nine members to be appointed by the governing body of the county or municipal corporation of the area of operation for staggered terms as specified by resolution of the governing body. . . . No authority created under this Code section shall transact any business or exercise any powers under this Code section until the governing body of the area of operation shall, by proper resolution, declare that there is need for an authority to function in such county or municipal corporation. . . .

OCGA § 31-7-72 (a). Accordingly, even if a hospital authority is formed as a public corporation and is construed as such a corporation, OCGA § 31-7-72 (a) makes plain that its formation does not require the submission of articles of incorporation or other organizational documents to the Secretary of State. A hospital authority therefore is not a corporation "incorporated . . . under the laws of this state" as that phrase is used in Rule 4 (e) (1) (A), and the service provisions set out in that rule are inapplicable. See *Foskey v. Vidalia City School*, 258 Ga. App. 298, 301-303 (b) (574 SE2d 367) (2002) (describing city school district as a "corporate body subject to suit," but

17

holding that district should have been served in accordance with OCGA § 9-11-4 (e) (5), the service provision applicable to public bodies or organizations). Cf. *In re Hosp. Auth. of Charlton County*, No. 12-50305, 2012 WL 2905796, at *4-9 (Bankr. S.D. Ga. July 3, 2012) (hospital authority was not a corporation eligible for relief under Chapter 11 of the Bankruptcy Code); *Fulton-DeKalb Hosp. Auth.*, 241 Ga. at 574-575 (although hospital authority was a public corporation, provisions of Worker's Compensation Act applied more narrowly to for-profit business corporations).

For these combined reasons, the trial court committed no error in concluding that service could not be perfected on the Hospital Authority under OCGA § 9-11-4 (e) (1) (A). It follows that service was never properly perfected on the Hospital Authority in the original suit brought by the plaintiff, rendering that suit void. See *Coles*, 316 Ga. App. at 546. Because a void suit cannot be renewed outside the period of limitation, see id., the current suit was not a proper renewal suit, and the plaintiff's wrongful death claims brought against the Hospital Authority therefore were barred by the applicable two-year statute of limitation. Consequently, the trial court did not err in dismissing the plaintiff's wrongful death claims with prejudice.

18

2. The plaintiff also contends that the trial court erred in entering final judgment on the wrongful death claims and in denying her motion for reconsideration. We disagree for the same reasons discussed supra in Division 1.

3. As previously noted, after the trial court dismissed the plaintiff's wrongful death claims with prejudice and entered final judgment on those claims pursuant to OCGA § 9-11-54 (b), the plaintiff filed a motion to amend her complaint to reinstate the same wrongful death claims, but under a different legal theory as to why they were not barred by the applicable statute of limitation. The trial court denied the plaintiff's motion to amend her complaint to reinstate the wrongful death claims, and the plaintiff now contends on appeal that the trial court erred in denying her motion. We are unpersuaded.

"A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). However, "[w]hile the right to amend is very broad, it may not be exercised after the case has been tried and judgment rendered therein." (Citations and punctuation omitted.) *Duffy v. Landings Assoc.*, 254 Ga. App. 506, 509-510 (2) (563 SE2d 174) (2002). "The provisions of [OCGA § 9-11-15] cannot be extended to allow an amendment after a judgment has been rendered thereon which judgment has not been reversed or set

aside." *Christopher v. McGehee*, 124 Ga. App. 310, 312 (2) (183 SE2d 624), aff'd, 228 Ga. 466 (186 SE2d 97) (1971).[9] Hence, the plaintiff was not entitled to amend her complaint to reinstate her wrongful death claims under a different legal theory after the trial court entered final judgment on those same claims under OCGA § 9-11-54 (b), where that judgment has not been reversed or set aside. The trial court thus committed no error in denying the plaintiff's motion to amend her complaint.

*Judgment affirmed. McMillian and Mercier, JJ., concur*.

---

[9] A pleading may be amended after judgment to conform to the evidence under certain circumstances, see OCGA § 9-11-15 (b), but that clearly was not the basis for the amendment sought by the plaintiff here.