**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 13, 2017**

# In the Court of Appeals of Georgia

A17A0796. IVEY v. MCCORKLE et al.

ELLINGTON, Presiding Judge.

George Ivey, in his official capacity as mayor of the City of Warrenton, filed a complaint seeking declaratory and injunctive relief against the Appellees in their official capacity as City councilmembers.[1] Ivey contended that the City's council (the "Council") had enacted or amended certain City ordinances in an attempt to usurp the powers of the City's mayor (the "Mayor") as set forth in the City's charter (the "Charter"), and that those ordinances are inconsistent with the Charter and therefore void. Following a hearing, the trial court found portions of two of the City's General Ordinances to be inconsistent with the Charter and enjoined the Appellees from

---

[1] The Appellees, in their official capacity, are Steve Giddens, Craig Hunter, Brenda Johnson, and Donnie Roland.

enforcing them. The trial court found that the other challenged ordinances did not conflict with the Charter, although it ordered that the Appellees rescind two of them. The trial court also awarded Ivey attorney fees. On appeal, Ivey contends that trial court erred in concluding that certain of the City's General Ordinances did not conflict with the Charter. He also claims that the trial court failed to award reasonable attorney fees. For the reasons set forth below, we affirm in part, reverse in part, vacate in part, and remand the case with direction.

The relevant facts are not in dispute. Section 2.10 of the Charter provides that the governing authority of the City is "vested in a city council composed of a mayor and five councilmembers, one of whom shall be the mayor pro tempore." Ga. L. 1990, p. 4631.[2] Further, under Section 2.16 (b) of the Charter, "the council shall have the authority to adopt and provide for the execution of such ordinances, resolutions, rules and regulations not inconsistent with [the] charter, the Constitution and laws of the State of Georgia[.]" Ga. Laws 1975, pp. 3970, 3981. The Mayor, under Section 3.10 of the Charter, is the City's chief executive officer, and possesses "all the executive and administrative powers contained in [the] charter." Ga. L. 1975, pp. 3870, 3986.

---

[2] The current Charter was enacted in 1975 and amended in 1990. See Ga. L. 1975, p. 3970; Ga. L. 1990, p. 4631.

2

At issue is whether certain of the City's General Ordinances and attendant policies, as amended or enacted by the Council, conflict with the Charter. Under OCGA § 36-35-3 (a), "[t]he governing authority of each municipal corporation shall have legislative power to adopt clearly reasonable ordinances, resolutions or regulations . . . which are not inconsistent with . . . any charter provision applicable thereto." An ordinance enacted in violation of OCGA § 36-35-3 (a) is void. See *Georgia Branch, Associated General Contractors, Inc. v. Atlanta*, 253 Ga. 397, 399 (2) (321 SE2d 325) (1984); *City of Buchanan v. Pope*, 222 Ga. App. 716, 718-719 (1) (b) (476 SE2d 53) (1996).

"The interpretation of statutes, ordinances, and charters presents a question of law for the court," and is subject to de novo review on appeal. *Lue v. Eady*, 297 Ga. 321, 326 (2) (a) (773 SE2d 679) (2015). See *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d 122) (2009).

> In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. Further, statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat their legislative purpose, and statutory construction must square with common sense and sound reasoning.

3

(Citations and punctuation omitted.) *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002). The rules of construction apply to the interpretation of ordinances as well as statutes. *City of Buchanan v. Pope*, 222 Ga. App. at 717 (1).

1. Ivey contends that the trial court committed reversible error in finding that Section 2-104 of the General Ordinances did not conflict with Section 3.12 (a) (12) of the Charter.[3] Although the trial court found that there was no conflict with the Charter, it also held that the parties had agreed that the ordinance was no longer necessary and ordered that it be rescinded. The Appellees represent, and Ivey does not dispute, that the Council has complied with the trial court's order and rescinded the portion of Section 2-104 of the General Ordinances with which Ivey took exception. A reversal of the trial court's finding that the now repealed ordinance did not conflict with the Charter would have no practical benefit to the parties with respect to Ivey's claims for injunctive and declaratory relief, nor, in light of our findings in Division

---

[3] Section 3.12 (a) (12) of Charter provides that "the mayor shall . . . [p]reside at all meetings of the city council." Ga. L. 1975, pp. 3970, 3986-3987. Section 2-104 of the General Ordinances, on the other hand, provided for a procedure, following the Mayor's failure to recognize a motion, whereby the authority of the Mayor to run a meeting would pass to the mayor pro tempore or other selected councilmember. The trial court found no conflict because the Charter did not address what would occur if the Mayor refused to recognize the right of a councilmember to make a motion or to speak, but noted that the Council now operates under Robert's Rules of Order, which sets forth a procedure to resolve that situation.

7, infra, as to Ivey's claim for attorney fees, and the issue is moot. See, e. g., *Babies Right Start v. Ga. Dept. of Pub. Health*, 293 Ga. 553, 555 (2) (a) (748 SE2d 404) (2013) (claims for declaratory and injunctive relief had become moot on appeal because the requested relief would have no effect); *Forbes v. Lovett*, 227 Ga. 772, 775 (183 SE2d 371) (1971) (appellants had no legal right to claimed appointment to civil service board where the ordinance on which they relied had been repealed, and argument on appeal that the defendants were under a legal duty to appoint appellants at the time the ordinance was in effect was moot where the repealing legislation had become effective).

2. Ivey contends that the trial court committed reversible error in finding that Sections 2-204 and 3-106 (6) of the General Ordinances did not conflict with Section 3.12 of the Charter.[4] The trial court, although it did not find a conflict between these General Ordinances and the Charter, directed that the provision at issue, which was

---

[4] Sections 2-204 and 3-106 (6) of the General Ordinances both provided, in pertinent part, that the clerk of council, the city administrator, and the mayor pro-tempore shall be the only authorized signatories on any and all checking and financial accounts. While Ivey contended the ordinances conflicted with his duties under Section 3.12 (a) (9) of the Charter to examine and audit all City accounts before payment, see Ga. L. 1975, pp. 3970, 3987, the trial court found that the City intended the signatory provisions to be a temporary action and that the Mayor had, by Council motion, been added as an authorized signatory on all accounts.

5

present in both of the challenged ordinances, be rescinded as unnecessary. The Appellees represent, and Ivey does not deny, that the Council has now complied with the trial court's order. Accordingly, and for the reasons also set forth in Division 1, supra, the issue is moot.

3. Ivey contends that the trial court erred in concluding that Sections 3-214, 3-215, and 3-216 of the General Ordinances do not conflict with the Charter. Relevant to this claim, Section 3.12 (a) (2) of Charter provides, in pertinent part, that "the mayor shall . . . [a]ppoint and remove all officers, department heads, and employees of the city except as otherwise provided in this charter." Ga. L. 1975, pp. 3970, 3986-3987. As to those exceptions, the Charter provides that the Council is authorized to appoint the city attorney, a clerk of council, a tax collector, and a city accountant, who serve at the Council's pleasure as the appointing authority. Ga. L. 1975, pp. 3970, 3989 (Section 3.20 (c)), 3991 (Section 3.22); Ga. L. 1990, pp. 4361-4362 (Section 2.20). Further, Section 3.30 of the Charter provides: "The council shall adopt rules and regulations consistent with the charter concerning personnel policies as may be necessary to provide for adequate and systematic handling of the personnel affairs of the City[.]" Ga. L. 1975, pp. 3970, 3991.

(a) Section 3-214 of the General Ordinances sets forth a procedure for termination of an employee or official which includes, following notice, a disciplinary hearing "over which the Mayor shall preside and serve as the decision maker." Although the disciplinary hearing process may be instituted by recommendation of a department supervisor and the city administrator, as well as the Mayor, the ordinance does not infringe on the power of the Mayor to appoint and remove, as contemplated by the Charter. Rather, the ordinance introduces a personnel policy which provides for notice and a hearing to the employee, while the Mayor, as the decision maker, retains the power to remove the employee or official. The trial court properly concluded that Section 3-214 of the General Ordinances did not conflict with the Charter.

(b) We now turn to Sections 3-215 and 3-216 of the General Ordinances. Section 3-215 provides that "[t]ermination and dismissal of city personnel, instituted at the direction of the Mayor, shall only be exercised at a regularly scheduled Council meeting," and provides for an appeal of the termination by "[a]ny employee or official . . . to the City Council, immediately at the Council meeting during which the employee was terminated." Section 3-216 contemplates that any personnel subjected to termination may appeal the dismissal at any regularly scheduled council meeting.

7

As to an appeal of termination, Section 3-216 provides that "[t]he Council may uphold, reverse, or modify the termination of the employee by majority vote of the Council, requiring three votes in favor of the Council's decision."

Unlike the disciplinary procedure set forth in Section 3-214, the appeal procedure contemplated by Sections 3-215 and 3-216 of the General Ordinances affords the Council with the discretion to nullify the termination decisions of the Mayor. The trial court found no conflict with the Charter because the Mayor, notwithstanding the employee's right to appeal, retains the right to appoint and remove, "and makes the final decision." But the Mayor can hardly be said to be the final arbiter when his or her removal decisions are subject to Council approval.[5] Section 3.30 of the Charter, when read in conjunction with 3.12 (a) (2) of the Charter, does not contemplate that the Council, in exercising its authority to implement a personnel policy, may reserve for itself the power to overturn the Mayor's decisions to remove an officer, department head, or employee. It follows that Sections 3.15 and

_____

[5] Indeed, the legislative design, as expressed in the ordinances, is that any termination at the Mayor's direction must be "exercised" at a regularly scheduled Council meeting, subject to immediate appeal at that same meeting, wherein the Council may reverse the termination.

8

3.16 of the Ordinances conflict with the Charter, and the trial court erred in finding otherwise.

4. Ivey claims that the trial court erred in finding that the City's personnel policies and procedures do not conflict with the Charter. More specifically, he contends that those policies bestow hiring power upon the Council and city administrator by filtering the applications that reach the Mayor, thereby conflicting with the Mayor's power to appoint and remove under the Charter.

The record shows that the Council amended the City's personnel policy by providing that any application for unfilled positions of employment be submitted to the Council. Thereupon,

> [t]he City Council, by affirmative vote, and upon recommendation of the City Administrator, shall provide the applications and other documents of the most qualified candidates to the Mayor for his consideration to fill the position at issue, however, the Council will be limited to providing no more than 5 applicants. The Mayor or his/her designee shall review approved application/resumes, conduct the standard background checks, interview the most qualified candidates, and make the appropriate appointments, subject to the availability of funds in the budget as approved by Council.

Appellees argue that the amended personnel policy simply contemplates hiring recommendations, and therefore does not abrogate the Mayor's authority to appoint and remove officers and employees. That policy, however, limits the applications provided to the Mayor to "the most qualified candidates" upon the affirmative vote of the Council, thus allowing for a scenario where the Mayor would be precluded from hiring his or her preferred candidate should the Council deem that candidate to be other than "the most qualified." While we can discern no infirmity in the Council expressing its opinion as to which candidates might be the most qualified, and in relaying that opinion to the Mayor through a formal process, the personnel policy, as written, infringes on the power of the Mayor, as expressly provided in the Charter, to appoint and remove City officers and employees. See *City of Buchanan v. Pope*, 222 Ga. App. at 717 (to the extent, if any, that the provisions of a city's personnel manual conflicts with the city's charter, the charter must prevail). The trial court erred in finding that the amended personnel policy did not conflict with the Charter.

5. In two related claims of error, Ivey maintains that the trial court erred in finding that the delegation of duties to the city administrator, as contemplated by Section 3-105 of the General Ordinances, as well as the attendant appointment of a

10

city administrator by the Council, did not conflict with the Charter. In pertinent part, Section 3-105 provides:

> As deemed necessary by Council, the City of Warrenton may create and fill the position of City Administrator, who may be delegated certain administrative duties, including, but not limited to, financial proceedings, personnel management, and other administrative tasks as defined by the Mayor and Council. The City Administrator shall have the ability to hire and terminate employees of the City, provided that any terminated employee is afforded the opportunity to appeal such a decision to council in the same manner as provided in the City personnel manual. This position shall be filled in the same manner as the Clerk of Council. The Clerk of Council, in addition to the duties provided for by the Charter and other ordinances, may serve as the City Administrator.

The Council subsequently named Mary Ann Moseley, who also held the position of clerk of council, as city administrator.

The trial court held that, to the extent the ordinance granted the city administrator the power to hire and terminate City employees, it conflicted with the Mayor's right to appoint and remove all officers, department heads, and employees of the City,[6] but that the remainder of the ordinance was within the powers granted

---

[6] In the same analysis, the trial court held that other ordinance provisions granting joint authority to the Mayor and Council to appoint and remove employees also violated the Charter.

to the Council under the Charter. The trial court also found that the Council was authorized to create the position of city administrator and appoint the clerk of council to serve in that position.

(a) Ivey does not contest the Council's authority to create the position of city administrator, but he contends that only the Mayor may delegate administrative duties to the city administrator. Section 2.16 (c) of the Charter provides that "[t]he council may by ordinance create, change, alter, abolish or consolidate offices, agencies and departments of the city and may assign additional functions to any of the offices, agencies and departments expressly provided for by the charter." Ga. L. 1975, pp. 3970, 3982. Section 3.20 (a) of the Charter, under the Section heading "Administrative and Service Departments," provides that "[t]he Council may establish, abolish, merge or consolidate positions of employment, departments, and agencies of the city . . . [and] shall prescribe the functions and duties of existing departments, offices, and agencies or of any departments, offices and agencies hereafter created or established." Ga. L. 1975, pp. 3970, 3988-3989. Thus, in light of the foregoing Charter provisions, the Council may create the position of city administrator and delegate duties thereto, including administrative duties.

12

As to the powers of the Mayor, Section 3.10 of the Charter provides that the Mayor "shall . . . exercise all of the executive and administrative powers granted to the city under the constitution and laws of the State of Georgia, and all the executive and administrative powers contained in this charter." Ga. L. 1975, pp. 3970, 3986. In addition, Section 3.12 (3) of the Charter provides that the Mayor "shall . . . [e]xercise supervision over all executive and administrative work of the city and provide for the coordination of administrative activities." Ga. L. 1975, pp. 3970, 3986-3987. Thus, the Charter contemplates that, although the Mayor possesses the administrative powers of the City, such powers may be exercised in a supervisory capacity. Reading the foregoing Charter provisions in pari materia, although the Council may assign administrative functions to the city administrator, the Mayor is required to supervise any administrative work which the city administrator performs on behalf of the City.

(b) We agree with Ivey that the Council lacked the authority, as contemplated by Section 3-105 of the General Ordinances, to appoint the city administrator. As set forth in Division 3, supra, the Charter contemplates that the Mayor appoint and remove "all officers, department heads, and employees of the City" other than the city attorney, a clerk of council, a tax collector, and a city accountant, who are appointed by the Council. The city administrator would thus fall within "all officers, department

13

heads, and employees of the City" and so subject to appointment and removal by the Mayor. Sections 2.16 (c) and 3.20 of the Charter, while authorizing the Council to create City offices and positions of employment, does not provide that the Council may appoint persons to fill such created offices and positions of employment, and no such authority is necessarily implied. Otherwise, the Council, through abolishing and creating offices and positions of employment, could render meaningless the Mayor's power to appoint and remove. See OCGA § 36-34-2 (2) (municipal governing body "shall not have the right . . . to alter such duties or responsibilities as are specifically given to a particular elective official by charter"). Pretermitting whether the Council could have lawfully altered the duties of the clerk of council to include those of a city administrator, or consolidated the two offices into one, it did not do so; rather, the Council created the separate position of city administrator and then appointed Mary Ann Moseley to serve in that position. The trial court erred in finding that Section 3-105 of the General Ordinances, to the extent that it authorized the Council to appoint the city administrator, does not conflict with the Charter.

6. Ivey further contends that the trial court erred in finding that Section 3-106 (6) of the General Ordinances does not conflict with the Charter. The challenged ordinance provides: "All mail addressed to the City, the City Council and/or the

14

Mayor of Warrenton shall be opened at City Hall by the City Clerk and it shall be logged in and distributed to the appropriate person within a reasonable amount of time after being received in the mail."[7] Ivey argues that the ordinance conflicts with Section 3.10 of the Charter, which provides that the Mayor is the chief executive officer of the City and has all administrative powers contained in the Charter, see Ga. L. 1975, pp. 3970, 3986, and that it follows that only the Mayor may prescribe the process for handling the mail.[8]

Section 2.20 of the Charter requires the clerk of council to, among other things, "maintain in a safe place all records and documents pertaining to the affairs of the city, and to perform such other duties as . . . the council may direct." Ga. L. 1990, pp. 4361-4362. As discussed in Division 5 (a), supra, Sections 2.16 (c) and 3.20 (a) of the Charter authorize the Council to prescribe the functions of existing offices. See Ga. L. 1975, pp. 3970, 3982, 3989. The duties contemplated by Section 3-106 (6) of the

---

[7] The trial court found, and Ivey does not dispute on appeal, that although the Charter does not provide for the office of city clerk, and no such position has been created, that the "City Clerk," for purposes of the ordinance, refers to person holding the office of clerk of council.

[8] Ivey also complains that Appellees have interpreted the ordinance as mandating that the clerk of council open all the mail, including personal mail. The argument shows no error by the trial court, which expressly found that "[t]he ordinance does not authorize [the clerk] to open personal mail."

15

General Ordinances are also logically related to the record keeping function of the clerk of council, a duty of that office specifically set forth in the Charter. Nor does the Charter contemplate that the Mayor have sole authority over the mail. Thus, it was within the power of the Council to direct the clerk of council to open, log, and distribute the mail, to the extent specified, and the trial court did not err in finding no merit in Ivey's objection to Section 3-106 (6) of the General Ordinances.

7. Lastly, Ivey contends that the trial court's award of attorney fees was arbitrary and unreasonable. Although Ivey claimed that he incurred reasonable attorney fees in the amount of $21,930, as well as certain out of pocket costs, the trial court awarded $5,000 in attorney fees and additional expenses, specifically taking into account, among other considerations, that Ivey had succeeded on two claims and was only "entitled to recover for issues on which he was successful."

> [A] local government must pay a local official's attorney fees (1) when the official, acting in his official capacity, is required to hire outside counsel to assert a legal position the local government attorney cannot assert because he or she has a conflict arising from his or her representation of the local government, and (2) when the official is successful in asserting his or her position.

16

*Boswell v. Bramlett*, 274 Ga. 50, 53 (3) (549 SE2d 100) (2001). "This is not because of any bad faith or improper conduct on the part of the local government. Rather, attorney fees in this instance are simply an expense of government operation." (Punctuation and footnote omitted) Id. See *City of Stockbridge v. Stuart*, 329 Ga. App. 323, 329-330 (765 SE2d 16) (2014) (affirming, in light of *Boswell*, the trial court's fee award to the former mayor of appellant city).

In view of the trial court's findings below, as well as of this Court on appeal, Ivey successfully litigated numerous claims that he was entitled to declaratory and injunctive relief because the Council had enacted ordinances which improperly divested the Mayor of powers granted to that office under the Charter. More specifically, as to the claims set forth in Divisions 1 and 2, supra, Ivey prevailed by securing an order requiring the ordinances at issue be rescinded,[9] thus, as acknowledged by the Appellees, "giving [Ivey] the relief he sought."[10] The trial court

---

[9] The trial court also ordered that the Council rescind a resolution authorizing the employment of a law firm to assist in the amendment of the Charter, among other matters.

[10] See generally *Magnetic Resonance Plus, Inc. v. Imaging Systems Intl.*, 273 Ga. 525, 529 (2) (543 SE2d 32) (2001) ("[A] plaintiff prevails when actual relief on the merits materially alters the legal relationship between the parties by modifying the defendant's behavior in any way that directly benefits the plaintiff.") (citations omitted).

granted additional relief as to two of Ivey's other claims upon finding that the Council had enacted ordinances that, at least in part, conflicted with the Charter, and, as set forth in Divisions 3 through 5, supra, the trial court erred in finding that other of the City's ordinances did not conflict with the Charter. Although Ivey was not successful in obtaining all of his requested relief, he was successful on his principle claims, particularly that the Council's enactments conflicted with Mayor's power to appoint and remove under the Charter. See *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842, 847 (5) (583 SE2d 839) (2003) (appellant, a former magistrate, was not successful in all of her claims against the county, but was nevertheless entitled to the full amount of her reasonable legal fees, and not a partial award of one-fifth the amount of requested fees, where she prevailed on her principal claim in her petition for mandamus). "Thus, [Ivey] is entitled to the full amount of reasonable attorney fees," and not an award of reasonable fees attributable only to those claims on which he prevailed. Id.

In addition to its finding that Ivey was only entitled to fees for issues on which he was successful, the trial court found an unspecified duplicity of charges in the fees claimed and also questioned some billing associated with counsel's preparation of the complaint and a brief, which suggests that the trial court had concluded that not all

18

of the requested fees were reasonable. The trial court did not, however, expressly determine what portion of the requested fees were reasonable, and any finding as to that amount cannot otherwise be determined from the order. Accordingly, we vacate the trial court's attorney fee award and remand for reconsideration of Ivey's claim for attorney fees. Compare *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. at 847 (5) n. 7 (reversing but not remanding where trial court did not find that the amount of the requested attorney fees was unreasonable; rather, the only basis of its erroneous partial fee award was that appellant had failed to prevail on all of her claims).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Andrews and Rickman, JJ., concur.*